**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| Erin Smith, et al | * | |
| Plaintiffs | * | |
| Vs. | * | Case No: **1:21-CV-02170 (FYP)** |
| David Walls Kaufman, et al | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT DAVID WALLS KAUFMAN'S MEMORANDUM IN SUPPORT TO MOTION FOR SUMMARY JUDGMENT**

Defendant David Walls Kaufman, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, respectfully moves this Court for entry of summary judgment in his favor as to all claims asserted by Plaintiffs in the Second Amended Complaint. The claims include assault and battery, wrongful death, and aiding and abetting/civil conspiracy.

**INTRODUCTION**

Plaintiffs allege that Defendant Kaufman intentionally assaulted Metropolitan Police Officer Jeffrey Smith during events at the United States Capitol on January 6th, 2021, causing Officer Smith to sustain a concussion that led to Officer Smith's suicide nine days later on January 15th, 2021. Plaintiffs further allege that Defendant Kaufman conspired with or aided a co-defendant, Taylor Taranto, in the purported assault and battery. After extensive discovery, however, Plaintiffs have presented no eyewitness testimony, physical evidence, or reliable expert conclusions to support these claims. Plaintiffs have failed as a matter of law to prove that Defendant David Walls Kaufman was the proximate cause of any injury to Officer Jeffrey Smith.

1

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1. Officer Jeffrey Smith was a Metropolitan Police Department (MPD) officer assigned to assist with crowd control during the events at the U.S. Capitol on January 6, 2021.

2. Officer Smith submitted an MPD incident report on January 6, 2021, describing that he was struck by a metal object during the disturbance. (See Exhibit A - MPD Injury Illness Report).

3. Officer Smith did not name or describe Defendant David Walls Kaufman in any official report, statement, or communication prior to his death. (See Exhibit A - MPD Injury Illness Report and Exhibit B - Medical Records).

4. Dr. David Walls Kaufman did not throw the metal object described by Officer Smith in the MPD incident injury or illness report. (See Exhibit A - MPD Injury Illness Report, Exhibit C - Plaintiff's answers to interrogatories 21, Exhibit D - Defendant's Answers to Interrogatories 8, 25).

5. Plaintiff Erin Smith testified that she has no personal knowledge of Defendant Walls-Kaufman ever meeting or communicating with Co-Defendant Taylor Taranto. — Exhibit E - Pl Depo 22:18–23:5 (Mar. 6, 2025).

    (https://www.app.skribe.ai/clip/_joW1BZ87HhTdFV_d1xa1)

6. Plaintiff Erin Smith further testified that she was not present during the incident on January 6, 2021, and relies entirely on open-source videos and expert opinions to support her claims. — Exhibit E - Pl Depo. 21:3–15; 26:18–27:3; 96:7–11 (https://www.app.skribe.ai/clip/ddUG5hQ6Pc72pIDt0kTgg,

    https://www.app.skribe.ai/clip/Wh--ZXMBWY2g66G6VOlC7 )

7. Plaintiff Erin Smith also admitted she has no evidence that Defendant Walls-Kaufman and Co-Defendant Taylor Taranto had any agreement, plan, or communication regarding any conduct on January 6, 2021. — Exhibit E - Pl Depo. 22:18–23:5. (https://www.app.skribe.ai/clip/032ClYWWttIjvUGWaiDBW)

8. Officer Smith returned home after the January 6th, 2021 incident with no indication of any black eyes from any assault. (https://www.app.skribe.ai/clip/RpWsw055j5Hc0FpJr5Lsu)

9. Officer Smith was medically evaluated by MPD Clinic staff on January 7 and January 11, 2021, and was cleared to return to full duty, and tragically died by suicide on January 15, 2021, on his way to his first day back to work. (See Exhibit B - Medical Records dated January 7th and January 11th, Exhibit F - Death Certificate, and Exhibit K Autopsy)

10. The death certificate listed a gunshot wound to the head as the immediate cause of death. (See Exhibit F - Death Certificate and Exhibit K - Autopsy.)

11. Plaintiffs' own expert, Dr. Patrick Sheehan, concluded that Officer Smith suffered a concussion after being struck by a metal pipe or similar object during the Capitol incident. — Exhibit E - Pl Depo 77:17–22; 84:6–11. (See Exhibit G - Patrick Sheehan's report). (https://www.app.skribe.ai/clip/dKeBqyLxzK_dHvc93vXdC)

12. Dr. Arden concluded that the cause of the depression and suicide was the blow from the metal object sustained by Officer Smith. (See Exhibit H - Affidavit of Dr. Jonathan Arden). (https://www.app.skribe.ai/clip/WiaxLtTAu9m4dApLfo6a2)

13. Dr. Jonathan Arden, in support of Plaintiff's Application for death benefits, stated in his affidavit, "The video of the event demonstrates that Officer Smith was struck in the face while his face shield was up. In the injury or Illness report that he filed, Officer Smith

reported pain in his "neck and face," corroborating that he was struck in the face. As a direct result of being struck in the face and head, Officer Smith was stunned and fell. The loss of consciousness resulting from the blow indicates that he suffered a concussion. The symptoms he manifested after being injured in the riot and leading up to his suicide, including anxiety and depression, represented post-concussion syndrome. Therefore, his mood changes were the direct result of the head trauma he suffered in the riot on January 6th, 2021." (See Exhibit H - Affidavit of Dr. Jonathan Arden).

14. Erin Smith, Plaintiff in her interrogatory response, stated that some unknown individual hurled a metal bar at the decedent at approximately 5:30 pm on January 6, 2021. (See Exhibit C - Plaintiff's Interrogatory Answer 21).

15. Plaintiff Erin Smith admitted in sworn deposition testimony that she has no firsthand evidence showing that Defendant Walls-Kaufman physically assaulted Officer Smith. — Exhibit E - Pl Depo 21:3–15. (https://www.app.skribe.ai/clip/KH6iqXbvL0LN-4gp8Inbh)

16. Erin Smith has no memory of her husband having any black eyes from an assault and battery. (https://www.app.skribe.ai/clip/RpWsw055j5Hc0FpJr5Lsu)

17. Plaintiff Erin Smith was in communication with Officer Smith during the January 6th incident, and Officer Smith made no mention of suffering any assault and battery. (See Exhibit I - Text Messages)

18. Plaintiff Erin Smith applied for and received death benefits under the Public Safety Officer Support Act after Officer Smith's death was recognized as occurring in the line of duty. (See Exhibit J - Award Letter)

19. Plaintiff gave a history of her interaction with her husband after he returned home from the incident of January 6, 2021 to Dr Patrick Shehan on February 18, 2022, stating that, "He said he lost consciousness, that he was hit by a metal pipe and didn't know where he was." (See Exhibit H - Affidavit of Dr. Jonathan Arden, dated March 8, 2022).

## LEGAL STANDARD

" A summary judgment is properly granted only when the pleadings and other materials on file demonstrate that no genuine issue of material fact remains for trial, and that the movant is entitled to judgment as a matter of law. Super. Ct.Civ.R. 56(c); Burch v. Amsterdam Corp., 366 A.2d 1079, 1083-84 (D.C.1976). This strict standard is imposed because summary judgment is considered to be an extreme remedy which should be granted only where it is "quite clear what the truth is." Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). To be successful on a motion for summary judgment, the moving party has the burden to demonstrate the absence of any material factual issue. Any doubt as to whether or not an issue of fact has been raised is sufficient to preclude a grant of summary judgment. Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). In this connection, the party opposing the motion needs to show only that there is sufficient evidence supporting the claimed factual issue to require a jury to resolve the parties' differing versions of the truth. Franklin Investment Co., Inc. v. Huffman, 393 A.2d 119, 122 (D.C. 1978)." McCOY, et al., v. Quadrangle Development Corporation et al.,470 A.2d 1256 (DC 1983)

## ARGUMENT

**A. Plaintiffs cannot establish an intentional Assault and Battery**

To prevail on assault or battery, Plaintiffs must prove an intentional act that caused harmful or offensive contact. "In the case of assault and battery, a plaintiff can recover for assault by proving "intentional and unlawful attempt or threat, either by words or acts, to do physical harm to the plaintiff," and for battery by proving an "intentional act that causes harmful or offensive bodily contact."" District of Columbia v. Chinn, 839 A.2d 701, 705 (D.C. 2003).

Here, no direct or circumstantial evidence supports that the Defendant intentionally struck Officer Smith. The claim rests entirely on ambiguous video footage subject to interpretation and lacks corroborating eyewitness testimony. Further, the alleged contact was not noted by Officer Smith in his own injury report or outlined in his medical records. Further, the Plaintiff has produced no admissible evidence that any contact by the Defendant Kaufman caused any harmful or offensive contact to Officer Smith.

"Battery is an intentional tort. "Intent and negligence are regarded as mutually exclusive grounds for liability. As the saying goes, there is no such thing as a negligent battery." 1 DOBBS, LAW OF TORTS § 26 at 51 (2001). " District of Columbia v. Chinn, 839 A.2d 701, 706 (D.C. 2003). "In every personal injury case, the plaintiff carries the burden of proving not only that he or she was injured but also that the defendant's tortious conduct caused the injury. See Manes v. Dowling, 375 A.2d 221, 224 (D.C. 1977). In the absence of "complicated medical questions," Jones v. Miller, 290 A.2d 587, 590 (D.C. 1972), the plaintiff's own testimony, without need for supporting expert medical testimony, will suffice to prove causation of injury. See id. "No complicated medical question" arises when: (1) the injury " 'develops coincidentally with, or within a reasonable time after, the negligent act,' " or (2) " 'the causal connection is clearly

apparent from the illness [or injury] itself and the circumstances surrounding it,' " or (3) " 'the cause of the injury relates to matters of common experience, knowledge, or observation of laymen.' " Id. at 590-91 (quoting Wilhelm v. State Traffic Safety Commission, 230 Md. 91, 92, 185 A.2d 715, 719 (1962); accord Early v. Wagner, 391 A.2d 252, 254 (D.C. 1978). International Sec. Corp. of Va. v. McQueen, 497 A.2d 1076, 1080 (D.C. 1985)

In the case at bar, Plaintiff can offer no testimony regarding the alleged assault and battery. Further, Officer Smith made no mention of any intentional assault or battery in his January 6th, 2021 injury report, claiming only that he was hit by some kind of metal object in the face shield. The Plaintiff was in communication with Officer Smith during the January 6th incident and Officer Smith made no mention of suffering any assault and battery. (see Exhibit I - Text Messages) After the completion of discovery, the Plaintiff can produce no eyewitness testimony or admissible evidence that Dr. Kaufman in any way assaulted or committed battery against Officer Smith.

Even if the Plaintiff could prove that an assault or battery occurred, there is no evidence that said contact caused any injury of any kind. The Plaintiff asserts that the assault and battery occurred at 2:50 PM on January 6th, 2021. (See Paragraph 8, Pl's Complaint) Officer Smith reported that he was hit by the metal object at 5:35 pm on January 6th, 2021. (See Exhibit A - MPD Injury Illness Report) The Plaintiff's damages, if any, would be limited to a period of less than three hours.

However, Officer Smith never reported any alleged assault by baton to his employer, never reported any alleged assault by baton in his medical records, and never mentioned any alleged assault and battery by baton to his wife by text during the January 6th, 2021 incident or when Officer Smith arrived home from the incident. Officer Smith had no black eyes, swelling,

7

or any documented injuries from the alleged baton assault and battery. The Plaintiffs' claims of assault and battery fail as a matter of law, and no expert testimony can revive the Plaintiffs' assault and battery claim or change the facts of this case.

**B. Plaintiffs cannot establish that any action taken by Dr. David Walls Kaufman was the proximate cause of the Death of Officer Smith.**

"When, by an injury done or happening within the limits of the District, the death of a person is caused by the wrongful act, neglect, or default of a person or corporation, and the act, neglect, or default is such as will, if death does not ensue, entitle the person injured, or if the person injured is married or domestic partnered, entitle the spouse or domestic partner, either separately or by joining with the injured person, to maintain an action and recover damages, the person who or corporation that is liable if death does not ensue is liable to an action for damages for the death, notwithstanding the death of the person injured, even though the death is caused under circumstances that constitute a felony." D.C. Code § 16-2701.

Under D.C. Code § 16-2701, a wrongful death claim requires Plaintiffs to show that the Defendant's wrongful act or omission was the proximate cause of the decedent's death. "To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." District of Columbia v. Wilson, 721 A.2d 591, 600 (D.C. 1998) (quoting District of Columbia v. Watkins, 684 A.2d 395, 402 (D.C. 1996)). "This court has defined proximate causation as that cause which, in natural and continual sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred." St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp., 350 A.2d 751, 752 (D.C. 1976) (internal

quotation marks omitted). "'Proximate cause is generally a factual issue to be resolved by the jury,' however, it becomes a question of law 'when the evidence adduced at trial will not support a rational finding of proximate cause.'" Majeska, 812 A.2d at 950 (quoting Washington Metro. Area Transit Auth. v. Davis, 606 A.2d 165, 170 (D.C. 1992)). Furthermore, a plaintiff may meet his burden by offering either direct or circumstantial evidence. See District of [*282], 515 A.2d 698, 708 n.12 (D.C. 1986)  District of Columbia v. Zukerberg, 880 A.2d 276 (D.C. 2005)

      The plain evidence shows that the precipitating event causing injury to Officer Smith was the metal pipe that he was hit with outside the Capitol. Dr. Sheehan, the Plaintiffs' medical expert, identified the metal pipe as the cause of Officer Smith's Concussion. (See Sheehan report, page nine attached to the Plaintiffs' Second Amended Complaint). The Plaintiff has no medical opinion, expert opinion, or any evidence that directly relates to Dr. Kaufman's actions as the proximate cause of the Death of Officer Smith. Dr Epstein and Bardley's Report, states, "It is our opinion, within a reasonable degree of psychiatric and psychological certainty, that officer Smith suffered significant physical and psychological injuries as a direct result of his experiences on January 6th, 2021, specifically the first physical assault at the hands of Dr. Walls Kaufman, which gave way to acute suicidality, leading to his untimely demise." (See Exhibit L, Forensic Autopsy Report page 12) This opinion fails as a matter of law to establish that, but for the actions of Dr. Kaufman, Officer Smith's death would not have occurred.

"In light of Burrage, we hold that the instructions given in Roy and in this case did not adequately convey to the jury the requirement that -- possibly barring unusual circumstances not present in this case -- a defendant cannot be held to have personally caused a death unless an action by the defendant is a but-for cause of the death, i.e., unless it is true that in the absence of the defendant's action the death would not have occurred. Fleming v. United States, 224 A.3d 213, 217 (DC 2020)

Nothing in the record before this Court suggests that but for the actions of Dr. Kaufman, Officer Smith would be alive today. Plaintiffs' initial expert, Dr. Arden, has opined that the cause of Officer Smith's concussion was being hit by the metal object, and further opined that Officer Smith's suicide was caused by symptoms caused by the concussion. (See Exhibit H, Dr. Arden's Affidavit) Officer Smith's cause of death was in fact a gunshot wound to the head (self-inflicted) on January 15, 2021, nine days after the January 6th, 2021 incident. Officer Smith was cleared by the Metropolitan Police Department medical staff to return to work on January 14th, 2021, finding that Officer Smith was fit for duty.

C. **No Evidence Supports the Plaintiff's Aiding and Abetting or Civil Conspiracy Claim**

To establish civil conspiracy or aiding and abetting, Plaintiffs must demonstrate: (1) an agreement to participate in a wrongful act; (2) knowledge and substantial assistance or encouragement; and (3) actual harm caused by the underlying tort. Bush v. Butler, 521 F. Supp. 2d 63, 68 (D.D.C. 2007). Plaintiffs have produced no evidence that Kaufman and co-defendant Taranto had any prior relationship, communication, or coordinated plan. Simply being present at the Capitol on January 6 does not support an inference of a conspiratorial agreement or concerted

action. Generalized assertions of association or proximity are inadequate to sustain a conspiracy or aiding-and-abetting claim.

"District law acknowledges the concept of civil conspiracy and assigns it the elements we outlined in section II. A. *supra* — basically, an agreement to take part in an unlawful action or a lawful action in an unlawful manner and an overt tortious act in furtherance of the agreement that causes injury. Early on, the tort of civil conspiracy was described as follows: "The essence of conspiracy is an agreement — together with an overt act — to do an unlawful act, or a lawful act in an unlawful manner." *Cooper v. O'Connor,* 99 F.2d 135, 142 (D.C. Cir.), *cert. denied,* 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938). *Accord Edwards v. James Stewart Co.,* 160 F.2d 935, 936-37 (D.C. Cir. 1947); *International Underwriters, Inc., v. Boyle,* 365 A.2d 779, 784 (D.C. 1976). Subsequent cases emphasize that agreement can only lead to liability if an act pursuant to it causes injury. *See DeBobula v. Goss,* 193 F.2d 35, 36 (D.C. Cir. 1951); *Blankenship v. Boyle,* 329 F.Supp. 1089, 1099 (D.D.C. 1971) ("gist of a civil conspiracy . . . is not the agreement . . ., but the civil wrong . . . done pursuant to the agreement"), *motion for stay denied,* 447 F.2d 1280 (1971) (per curiam), *supplemented,* 337 F.Supp. 296 (1972). The requirement of an actionable injury may explain why "there is no recognized *independent* tort action for civil conspiracy in the District of Columbia." *See Waldon v. Covington,* 415 A.2d 1070, 1074 n. 14 (D.C. 1980) (emphasis added) (citing *Lamont v. Haig,* 590 F.2d 1124, 1136 n. 73 (D.C. Cir. 1978)). Since liability for civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."

"The separate tort of aiding-abetting has not yet, to our knowledge, been recognized explicitly in the District, but the existence of the civil conspiracy action suggests a high probability that the legal rationale underlying aiding-abetting would also be accepted: The District law recognizes that a person's actions in support of a wrong may make him liable for the tortious injury (*i.e.,* civil conspiracy is only a means through which a plaintiff can establish vicarious liability, not an independent wrong). An agreement to participate in a wrongful course of action suffices to create vicarious liability. It seems likely that the District's courts would also find vicarious liability for support of wrongful action through knowing substantial aid or encouragement. Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).

Dr. Walls Kaufman does not know Defendant Taranto, has never met Defendant Taranto and indeed never conspired to do anything with Defendant Taranto. Plaintiff further can offer no testimony or evidence regarding any alleged conspiracy or agreement of any kind, as Defendant Taranto and Dr. Walls Kaufman are not personally acquainted, and Plaintiff can produce no evidence of any conspiracy or of any aiding and abetting of any kind. Even if the Plaintiff can prove that an assault or battery took place, the Plaintiff cannot prove as a matter of law any civil conspiracy or aiding and abetting or any cognizable injury. The Plaintiffs' claims of Aiding and Abetting and Civil Conspiracy fail as a matter of law.

## **CONCLUSION**

Plaintiffs have failed to establish that Dr. David Walls Kaufman was the proximate cause of the death of Officer Smith; in other words, the Plaintiffs have failed to establish that but for the actions of Dr David Walls Kaufman, Officer Smith would be alive today. The Plaintiffs have further failed to establish that any intentional assault or battery occurred against Officer Smith by Dr. David Walls Kaufman, and that any injury was sustained by Officer Smith because of said

intentional assault and battery. Plaintiffs have further failed to produce a scintilla of evidence of civil conspiracy or aiding and abetting between Defendant Kaufman and Defendant Taranto. There is no genuine dispute requiring a trial. For these reasons, the Court should grant summary judgment in favor of Defendant David Walls Kaufman on all counts.

                        Respectfully submitted,
                        **KEMET HUNT LAW GROUP, INC.**

                        /s/ Hughie D. Hunt
                        Hughie D. Hunt, Esq.
                        DC Bar # 486347
                        7845 Belle Point Drive
                        Greenbelt, MD 20770
                        301-982-0888
                        Attorney for Defendant, *David Walls Kaufman*
                        hhunt@kemethuntlaw.com

## **POINTS AND AUTHORITIES**

1. Fed. R. Civ. P. 56.
2. Burch v. Amsterdam Corp., 366 A.2d 1079, 1083-84 (D.C.1976).
3. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).
4. Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 34, 365 F.2d 965, 967 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).
5. Franklin Investment Co., Inc. v. Huffman, 393 A.2d 119, 122 (D.C. 1978).
6. Suzanne McCOY, et al., Appellants,v. Quadrangle Development Corporation et al.,470 A.2d 1256 (DC 1983).
7. District of Columbia v. Chinn, 839 A.2d 701, 705 (D.C. 2003).
8. 1 DOBBS, LAW OF TORTS § 26 at 51 (2001).
9. Manes v. Dowling, 375 A.2d 221, 224 (D.C. 1977).
10. Jones v. Miller, 290 A.2d 587, 590 (D.C. 1972).
11. Wilhelm v. State Traffic Safety Commission, 230 Md. 91, 92, 185 A.2d 715, 719 (1962).
12. Early v. Wagner, 391 A.2d 252, 254 (D.C. 1978).
13. International Sec. Corp. of Va. v. McQueen, 497 A.2d 1076, 1080 (D.C. 1985).
14. D.C. Code § 16-2701.
15. District of Columbia v. Wilson, 721 A.2d 591, 600 (D.C. 1998).
16. District of Columbia v. Watkins, 684 A.2d 395, 402 (D.C. 1996).
17. St. Paul Fire & Marine Ins. Co. v. James G. Davis Constr. Corp., 350 A.2d 751, 752 (D.C. 1976).
18. Majeska, 812 A.2d at 950 (quoting Washington Metro. Area Transit Auth. v. Davis, 606 A.2d 165, 170 (D.C. 1992)).

19. District of [*282], 515 A.2d 698, 708 n.12 (D.C. 1986) District of Columbia v. Zukerberg, 880 A.2d 276 (D.C. 2005)
20. Fleming v. United States, 224 A.3d 213, 217 (DC 2020).
21. Bush v. Butler, 521 F. Supp. 2d 63, 68 (D.D.C. 2007).
22. Cooper v. O'Connor, 99 F.2d 135, 142 (D.C. Cir.), cert. denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938).
23. Edwards v. James Stewart Co., 160 F.2d 935, 936-37 (D.C. Cir. 1947).
24. International Underwriters, Inc., v. Boyle, 365 A.2d 779, 784 (D.C. 1976).
25. DeBobula v. Goss, 193 F.2d 35, 36 (D.C. Cir. 1951).
26. Blankenship v. Boyle, 329 F.Supp. 1089, 1099 (D.D.C. 1971), motion for stay denied, 447 F.2d 1280 (1971) (per curiam), supplemented, 337 F.Supp. 296 (1972).
27. Waldon v. Covington, 415 A.2d 1070, 1074 n. 14 (D.C. 1980) (citing Lamont v. Haig, 590 F.2d 1124, 1136 n. 73 (D.C. Cir. 1978)).
28. Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th May 2025, a copy of the foregoing document was served electronically via this Court's electronic filing system upon Attorney for Plaintiff, Richard J. Link, and David P. Weber.

/s/ Hughie D. Hunt
Hughie D. Hunt, Esq.