# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Erin Smith, et al | * | |
| Plaintiffs | * | |
| Vs. | * | Case No: **1:21-CV-2170** |
| David Walls Kaufman | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' ANSWERS TO INTERROGATORIES
## OF CO-DEFENDANT DAVID KAUFMAN

1. Identify yourself and the decedent by stating separately your full names (and all other names by which you and the decedent have been known, if any), addresses for the past five (5) years, dates of births, and social security numbers.

**ANSWER:**

**Erin Smith, Alexandria, Virginia,**

**DOB: 05/01/1985, SSN 255-51-xxxx;**

**Addresses:  2812 Derek Rd., Alexandria, VA 22306;**

**7202 Regent Dr., Alexandria, VA 22307**

**Other variations on name: Erin Smith, Erin O'Riley Smith, Erin Elizabeth O'Riley Smith, Erin O'Riley, Erin E. O'Riley, Erin Elizabeth O'Riley**

**Decedent: Jeffrey Smith, Alexandria Virginia**

**DOB: 04/15/1985, SSN 361-74-xxxx**

**Addresses:  2812 Derek Rd., Alexandria, VA 22306;**

**7202 Regent Dr., Alexandria, VA 22307**

1

**Other variations on name: Jeffrey Louis Smith, Jeffrey L. Smith.**

2.  Identify by name, address, date of birth, and relationship to the decedent, all living parents, children, spouse, and all other persons who may be next of kin and/or beneficiaries of the legal action brought herein, including the nature of your relationship to the decedent.

    **ANSWER:**

    **Decedent died *in testate* with no children.  As the surviving spouse I am the sole heir.**

3.  Please describe the nature and extent of the decedent's education and any and all occupational licenses or certifications he possessed at the time of his death.

    **ANSWER:**

    **Bachelor's    Degree    in    Sociology,    Northern    Illinois    University. See Jeffrey Smith's MPD training history.**

4.  Please list in chronological order the names and addresses of each of the decedent's employers for the five (5) years immediately preceding his death, the title of each job held, and the rate at which he was paid by each such employer.

    **ANSWER:**

    **From 07/2008 to date of death:**
    **Police Officer**
    **Metropolitan Police Department**
    **300 Indiana Avenue, NW**
    **Washington, DC 20001**

5.  Have you received any written and/or electronic communication from any physician, physician assistant, nurse, and/or other healthcare provider who examined or treated the decedent, or any agent, employee, or representative of said person(s), regarding and/or in connection with the events and/or health conditions that are the subject matter of the

Complaint? If so, as to each, state the name, address, and telephone number of the person from whom such communication was received; the date on which it was received; the substance of the communication; and provide copies thereof.

**ANSWER:**

**The following records are attached to the Response to Request for Production of Documents:**

**Medical Treatment:**

**The Police & Fire Clinic, 920 Varnum St NE, Washington, DC 20032.**

**Death:**

**US Park Police Crash Report**

**Autopsy:**

**Virginia Medical Examiner, 10850 Pyramid Pl, Suite 121. Manassas, VA 20110**

6. Had the decedent ever made a claim for personal injuries? If so, with respect to each such claim, please state the date and place of the incident; the injuries for which such claim was made; and the jurisdiction and case number associated with any related lawsuits.

**ANSWER:**

**None that I am aware of.**

7. Had the decedent ever undergone a physical examination, diagnostic tests, and/or health history questionnaire in connection with an application for life or health insurance? If so, with respect to each such application, please state the name of the insurance company to whom he made application or to whom application had been made on her behalf; the date of all examinations or tests; the name and address of all physicians by whom the examinations or tests were performed; and the number of the policy issued, if any.

**ANSWER:**

**None to my knowledge.**

8. Identify any and all chronic health conditions, diseases, illnesses, injuries, and/or disabilities suffered by the decedent during the 10-year period prior to his death, and for each, give the dates and details concerning the nature of said disease, illness, injury, disability, and/or chronic health condition, the treatment rendered to the decedent, and whether or not said condition had ever been diagnosed as affecting the decedent's life expectancy.

**ANSWER:**

**None – Jeffrey Smith was in excellent health, and passed all his physicals so he was able to work full unrestricted duty as a police officer.**

9. Itemize and show how you calculate any economic damages claimed by you on behalf of the estate in this action, and describe any non-economic damages claimed.

**ANSWER:**

**Cheryl Hyder's calculation will be supplied.**

10. Did the decedent own any type of bank, savings and loan, credit union account stocks, bonds or other securities, promissory notes, or similar evidence of equity or indebtedness at the time of his death? If so, please identify any and all of the above and the current status thereof, noting each record or other source of information consulted by you to answer this Interrogatory, and provide copies of all such records and sources of information.

**ANSWER:**

4

Yes, Jeff owned the following accounts and these documents are provided:

Bank of America #xxx-xxxx-5790 and #xxxx-xxxx-4796. Statements from 11/19/20, 11/21/21.

Police Federal Credit Union Car Note (stamp showing paid off as of 07/14/20).

Weichert Mortgage Statement dated 12/02/20.

11. Please state the amount you contend constitutes the decedent's funeral expenses and the amount of the expenses of his last illness.

**ANSWER:**

Funeral expenses- $4,959.00

Last Illness -      $0.00

12. Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action, including any claim for damages, and state the subject matter of the information possessed by said person(s).

**ANSWER:**

<u>Erin Smith</u>
I am the surviving spouse of Jeffrey Smith. Among other things, I know the following:

-Jeffrey Smith and I dated for four (4) years before marriage. In 2017, I moved into Jeff's house (Alexandria, VA). On 02/02/19 we were married. At the time of the marriage, I worked for an educational production company and Jeff was a full-time police officer.

-In 2020 when the pandemic hit, I worked from home. Jeff continued to work 40

hours per week, plus overtime.  Jeff would work weekends and evening shifts.  He worked afternoon-evening  shifts from 2:00 pm to midnight (he earned differential pay). He also worked holidays (except for Thanksgiving).

Jeff and I shared a life together.  Jeff did all of the cooking, we spent time watching movies, tv, etc.; Jeff enjoyed cooking and entertaining. We vacationed together.

Prior to January 6, 2021, Jeff had no history of mental illness or depression. In addition, he had no history of any physical illness.

I recall the events of January 6, 2021.  Jeff texted me from the Capitol with a message "London falling."  Jeff arrived home from work on January 7, 2021 at 2:00 am.  He said that he had been hit in the head with a metal pipe and did not know where he was. He mentioned other things that happened that day but I did not press him for more information.

After January 6, 2021, I observed various issues with my husband.  He complained of vision problems, headaches, balance problems, lack of focus/concentration, memory problems, sleep problems, and problems with lights and sounds.  He did not want to have the lights on (he said it bothered him).  As far as sleep problems, I noticed him up in the middle of the night.  He was emotionally irritable.

I noticed memory problems (for example, he did not remember to do things that he usually did each day).

When I spoke to Jeff he seemed mentally and emotionally distant.

I observed that he was physically clumsy and it appeared that he lost his balance while walking.   He repeatedly said that he had headaches.

-<u>MPD Officer Matthew Givens</u> (Tel #267-9902-2554)

Officer Givens is a friend and a co-worker of decedent. Officer Givens had never known decedent to be depressed or angry. He was shocked that decedent died by suicide.

-<u>Andrew Hass</u> (Tel #708-606-5665)

He was Jeff's childhood friend, He spoke to Jeff a day or two after January 6, 2021. Decedent sounded different (down, quiet, tired) and relayed he had been struck in the head and had pain in his neck.

<u>Antje Farmer</u> (Tel #703-283-9960).

She was Jeff's friend. She would walk her dog with Jeff. Jeff told her the events of January 6 were "crazy" and were "like a movie".

<u>Wendy Smith (mother) and Richard Smith (father).</u>

They know that Jeff did not have a history of depression or mental illness. After January 6, 2021, Jeff told his parents that he had been off from work for a week and that the riots were "crazy."

<u>Sgt. David Casetta</u>, Tel #240-381-4329. Sgt. Casetta was Jeff's Sergeant at the 2nd District.

<u>Dr. Olusolo Molomo, DC Fire and Police Clinic.</u>

Dr. Molomo performed an examination of Jeffrey Smith on or after January 6,

2021, as per DC Fire and Police Clinic notes.

**Pamela Orialfo**, Nurse practitioner, DC Fire and Police Clinic.

~~Orialfo performed an examination of Jeffrey Smith on or after January 6, 2021 as~~

per DC Fire and Police Clinic notes.

**MPD Officer Dustin Navarro.**

Officer Navarro received a report of an on-the-job injury with Jeffrey Smith.

**Chief Robert Contee.**

Chief Contee testified before Congress and offered his gratitude for the service of
Jeffrey Smith and other officers who served on January 6, 2021.

**US Capitol Police Officer Aquilino Gonell (Ret.)**

Sgt. Gonell was in the US Capitol Building on January 6, 2021.  While defending the
Capitol, Sgt. Gonell was seriously injured and was forced to retire.  He can describe
the events of that day

**US Capitol Police Officer Harry Dunn (Ret.).**

Officer Dunn was in the US Capitol Building on January 6, 2021.  He can describe
the events of that day interacting with rioters (including physical altercations) and
stood guard outside of Speaker Pelosi's office.
He can describe the events of that day.

**MPD Officer Michael Fanone (Ret.):**

Officer Fanone was in the US Capitol Building on January 6, 2021.  Officer Fanone was assaulted , beaten and threatened with his own service weapon.  He suffered resulting physical and psychological injuries.

**MPD Officer Daniel Hodges;**

Officer Hodges was in the US Capitol Building on January 6, 2021.  Officer Hodges was pinned in a door and suffered physical injuries.

The Police Accident Report (from the motor vehicle accident of 01/15/21) lists the following persons:

> **Officer Gillespie** Badge #0285, US Park Police,
>
> **Detective Bourke** at 202-610-8754
>
> **Samantha J. Singer**

> **Kevin B. Dent**

**Jocelyn Posthumus**, Virginia Medical Examiner

Dr. Posthumus performed the autopsy on Officer Smith.

The discovery from the government includes an **Excel spreadsheet**, identifying the bodycam from those Officers who were on scene at the time of the occurrence.  Those officers have personal knowledge of the scene and can authenticate the videos.

John Earle Sullivan is believed to be the video operator for the Jayden X and Insurgence USA videos that captured the events inside the US Capitol.

Samuel Montoya is believed to be the video operator for the Resistance Video.

13. Identify each person whom you expect to call as an expert witness at trial, and for each

such expert, state the subject matter on which the expert is expected to testify, the substance

of the findings and opinions to which the expert is expected to testify, a summary of the

grounds for each opinion, and provide copies of each expert's CV, fee schedule, invoices,

list of previous legal matters in which the expert has provided opinions, and any written

report made by the expert concerning the expert's findings and opinions in this case.

**ANSWER:**

**The Plaintiffs have filed their expert disclosure and identified the expert witnesses**

**(listed below). The statements and documents in the expert disclosure are**

**incorporated herein by reference.  The Plaintiffs have also provided the CV,**

**invoices and other documentation for each expert.**


**Jonathan Arden, MD, 333 Las Olas Way, #1104 Las Olas Way, #1104, Fort**

**Lauderdale, FL 33301.  Dr. Arden is a forensic pathologist who will testify that**

**Jeffrey Smith's death was caused by the events of January 6, 2021 while working as**

**police officer.   Dr. Arden's opinions are based on his review of the autopsy, the**

**medical reports of the Police & Fire Clinic, his review of bodycam video, his review**

**of Dr. Bardey and Dr. Sheehan's reports, the short temporal period between**

**January 6, 2021 and January 15, 2021; and were also based on his extensive**

**knowledge, training and experience as a forensic pathologist.**

**Alexander Sasha Bardey, MD and Dr. Ally Epstein, Fifth Avenue Forensics, 303 5th**

**Ave., #403, New York, New York 10016.  Dr. Bardey is a forensic psychiatrist who**

**will offer a post-humous forensic opinion on Jeffrey Smith, as to the assault and**

incident at the US Capitol. His report will be supplied.

<u>Grant Fredericks</u>, Forensic Video Solutions, 11001 East Coyote Rock Lane, Spokane Valley, WA 99206. Mr. Fredericks is a forensic video analyst whose testimony is based on his review of several bodycam videos that captured the events inside the US Capitol Building on January 6, 2021. He will testify as to the assault that was observed in the video between Defendant Kaufman and decedent. The basis of his opinion is the video, and his calibration and synchronization based on forensic techniques developed and used in his company's lab. This technique allows for a frame-by-frame analysis to accurately assess the temporal and spatial events in the video.

<u>Cheryl B. Hyder</u>, 10195 Main Street, Suite M, Fairfax, VA 22031. Ms. Hyder is a forensic accountant who will testify as to the loss of earning capacity directly caused by the decedent's death. She is working on her forensic report. This testimony is based on her review of documents, to include decedent's tax returns; the family budget; earnings, salary, fringe benefits, overtime, promotion, training, evaluations) information from MPD; decedent's personnel file; and interview with Erin Smith.

14. If you intend and/or reserve the right to rely upon any documents, photographs, electronically stored information, or tangible things to support a position that you have taken or intend to take in the action, including any claim for damages, provide a brief description, by category and location of all such documents, electronically stored information, and tangible things, and identify all persons having possession, custody, or control of them.

<u>ANSWER:</u>

Plaintiff reserves the right to use all video, photographs and documents that have been

provided in discovery in this case.  Among other things, the following

information/documentation has been provided:

~~Marriage Certificate – Jeffrey Smith & Erin Smith.~~

BWC video and still pictures from January 6, 2021

Open source video from January 6, 2021

Cell phone texts between Jeffrey Smith and me on January 6, 2021.

DC Police & Fire Clinic Medical records

Metropolitan Police Dept records to include earnings history (overtime history,

differential pay for holiday, overtime and weekends), training history, benefits scale,

retirement contributions, union scale, comparable employee earnings history, backpay and

adjustments pursuant to the Collective Bargaining Agreement)

DC Retirement Board & Mission Square Retirement statements.

Decedent's tax returns.

Police Accident report

Autopsy report

Dr. Arden's report

Dr. Sheehan's report

Dr. Bardey's report.

Grant Fredericks' report

Cheryl Hyder's report

See Plaintiffs' Response to Request for Production of Documents for all such records.

15. State separately and in detail all injuries, mental anguish, and/or conscious pain and suffering you claim the decedent sustained as a result of the alleged negligence by Defendants, and the facts which form the basis for said claims.

**ANSWER:**

**Objection as to the form of the question. Subject to and without waiving said objection:**

**Injury – neck, face (Clinic report mentions flying object outside capitol struck in face shield). According to Dr. Sheehan and Dr. Arden, decedent suffered a concussion. The autopsy report shows facial fractures (not consistent with the travel of the bullet).**

**Mental Anguish  -     Significant change in mood, sleeplessness, lack of focus, irritability, anger, depression, withdrawn, not feeling (or acting) like himself,**

**Pain and suffering -    significant emotional pain and torment that led to decedent taking his own life on the day he was scheduled to return to work. I observed the following issues and changes in my husband after January 6, 2021: headaches, loss of balance, vision problems, sensitivity to light/sound and sounds, cognitive problems with memory and performing simple daily tasks, irritability, and insomnia (crying in the middle of the night). The reports from Dr. Sheehan and Dr. Bardey contain detailed information about decedent's challenges after  January 6, 2021.**

16. If you and/or your experts intend to rely upon or use in direct examination any medical article, treatise, or other publication, identify the document and state: the title of the publication, journal, magazine, or treatise in which each document was published; the name and address of the publisher; the date of publication; and the volume and page number or section referenced.

**ANSWER:**    To be supplied.

17. For each of the five years preceding the date of the decedent's death, please provide an estimate of the amounts expended by the decedent annually (i.e. personal expenditures), noting each record or other source of information consulted by you to answer this Interrogatory, including, but not limited to: rent or mortgage; food; clothing; transportation; utilities; household repairs; medical/dental services; and entertainment.

**ANSWER:**

**This is an estimate to the best of my knowledge.  This estimate is subject to change should further information become available:**

**From January 2016 to 2020, Jeffrey Smith paid the bills himself.  I would give money as needed to him.**

**From August 2020 until January 2021, I took over paying the bills.**

**We had separate finances.  We had no joint account.**

**The only joint bill we had was the mortgage (starting in 2020).**

|  | January 2016 to August 2020 | August 2020 to January 2021 |
|---|---|---|
| **Mortgage** | $108,000 | $16,136 |
| **Utilities (electric & water and gas)** | $25,000 | $7,000 |
| **Household Repairs -** | $100,000 | $50,000 |
| **Medical/Dental -** | negligible | |
| **Entertainment** | $31,500 | $3,500 |
| **Food** | $117,000 | $10,000 |
| **Clothing:** | $11,250 | $1,250 |
| **Transportation** | $30,000 | $3,000 |

14

18. Describe in detail each act or omission that you contend constitutes an assault or that otherwise forms a basis for your claim against Defendant Kaufman and identify each person and document having or containing information that supports your contentions.

**ANSWER:**

**I was not personally present in the US Capitol. According to my counsel, Plaintiffs will rely on the videos (to include officers' BWC as well as open source video). This video has been examined by a forensic expert, Grant Fredericks. According to Mr. Fredericks' report, on January 6, 2021 Decedent was inside the US Capitol.**

**Decedent and fellow police officers were escorting the rioters out of the US Capitol building on the House side.**

**Defendant Kaufman donned a maroon and white jacket.**

**Decedent was in full police gear and had his face shield up (leaving his face and eyes exposed).**

**Kaufman struck decedent with his own police baton.**

**Kaufman had the baton in his hand.**

**Immediately after this occurrence (as the rioters were exiting the building), the bodycam reflects that Decedent was noticeably different. Decedent had been actively engaged in crowd control up until the interaction with Kaufman. After the interaction with Kaufman, decedent moved to the side and was dis-engaged, allowing his co-workers to take the lead in removing the rioters.**

**Please see the report and the video (frame-by-frame sequence) from Grant Fredericks for detail.**

19. Describe the decedent's medical history in detail for the 10 years prior to his death, and/or

specify the business/medical records from which said medical history may be derived or ascertained, including the names and addresses of the physicians and hospitals who examined or treated him in the 10 years prior to her death, the dates of treatment, the diagnoses and prognoses given, and whether you contend that a prior health condition was aggravated by the events alleged in the Complaint.

**ANSWER:**

**The decedent was in excellent health prior to January 6, 2021.**

**Please see the medical records from the Police & Fire Clinic.**

**I never knew Jeff to go to the doctor or to have a primary care doctor in all the time I knew him (other than dental visits).**

20. State the names and addresses of each person not heretofore mentioned in your answers to these Interrogatories who have personal knowledge of facts material to this case, and the substance of each person's knowledge.

**ANSWER:**

**The following persons have knowledge of the photographs and video footage of the incident that gives rise to this case:**

**Custodian of records from Metropolitan Police Department (BWC).**

**Custodian of records from US Capitol Police Department (BWC).**

**The government discovery contains an Excel spreadsheet that identifies all of the BWC by officer's name.**

Custodian of records – US Capitol.

The custodian of records (Metropolitan Police Department, Human Resources Division) has knowledge of Jeffrey Smith's earnings, benefits, training, etc.

The individuals identified on the Police Accidents report and the medical examiner have knowledge of the circumstance surrounding Jeffrey Smith's death.

The parents of Jeffrey Smith (Richard Smith and Wendy Smith); and the parents of Erin Smith, Lester ("Gene") O'Riley and Anne O'Riley, have knowledge of, inter alia:

-the marriage of Erin Smith and Jeffrey Smith.

-the relationship of Erin Smith and Jeffrey Smith

-the circumstances of Jeffrey Smith's death and its impact on Erin Smith

(emotionally, financially and otherwise).

21. If you contend that any person, other than a party to this case, caused or contributed to the allegations you are making, give a concise statement of facts which support each contention.

**ANSWER:**

In addition to David Walls-Kaufman and Taylor Taranto:

An unknown individual hurled a metal bar at Decedent at approximately 5:30 pm on January 6, 2021.  The bar struck the Decedent.

The entire 'atmosphere' of January 6, 2021 was belligerent to the police (rioters calling the police names like "traitors"; "pussy's" saying things like "get a real job"; or "we do not support you" or "fuck you" (just by way of example).

22. State the names and addresses of all persons known to you who have given signed, written, and/or recorded statements concerning the subject matter of this action, the date of each

such statement, identifying the person taking the statement and the names and addresses of the present custodian of each such statement. If made by Defendants or any alleged agent, servant, or representative of Defendants, attach hereto exact copies of all such statements.

**ANSWER:**

**D.C. Police Chief Robert J. Contee III provided testimony to the House Appropriations Committee that one of his officers, Jeffrey Smith , died by suicide on Jan 15. He said: "We honor the service and sacrifices of Officers Brian Sicknick, Howard Liebengood, and Jeffery Smith , and offer condolences to all the grieving families," Contee said. "The costs for this insurrection — both human and monetary — will be steep."**

23. If you are aware of any admissions, oral statements or conversations made at the time of, or any time subsequent to, the events alleged in the Complaint, up to the present time, by Defendants or any alleged agents, servants, or representatives of Defendants, state the substance of each such admission, statement, and/or conversation, giving the name, address, occupation, and telephone number of those persons who have personal knowledge of such statements, made the statements, and/or witnessed the same, and the places, times and dates when such statements were made.

**ANSWER:**

**Defendant David Walls Kaufman pled guilty in US District Court (Case # 22-CR-216) to parading 50 USC §5104(e)(2)(G). To that extent, Kaufman has acknowledged (under oath) his participation in the events of January 6, 2021, including entering the building without permission (trespassing) and parading inside the US Capitol**

building.  To the extent that there has been a presidential pardon, there was still an admission in open court of the Defendant's involvement in the events of January 6, 2021.

24. Please identify any and all liens that you are aware of in connection with the care and treatment related to the events alleged, including the amounts of such liens.

**ANSWER:        Objection, as this Interrogatory calls for the production of information that is not reasonably calculated to lead to admissible evidence.  Subject to and without waiving said objection, none.**

25. Was the decedent ever entitled to Medicare or Medicaid benefits?  If so, please state the date on which decedent first became entitled to receive such benefits; the decedent's Medicare/Medicaid Claim Number(s); and whether any of the medical expenses related to the incident alleged in the Complaint have been submitted to, or paid by, Medicare/Medicaid.

**ANSWER:    Objection, as this Interrogatory calls for the production of information that is not reasonably calculated to lead to admissible evidence.  Subject to and without waiving said objection, none.**

26. State whether you have entered into any release, settlement, or any other agreement, formal or informal, whether reduced to writing or not, pursuant to which the liability of any person has been limited, reduced, or released in any manner with respect to the subject matter that forms the basis for this action.

**ANSWER:        No.**

27. If you contend that any portion of any medical record, chart, or report is inaccurate, false, or altered, identify each document and each part of it that you contend is inaccurate, false, or altered, and as to each contention, state the factual basis for it.

**ANSWER:**

**The Police & Fire Clinic is inaccurate to the extent that it neglects to mention the physical symptoms, and the emotional pain and suffering that Decedent after January 6, 2021 (which I personally observed).**

I DO SOLEMNLY SWEAR OR AFFIRM THAT THE FOREGOING IS TRUE TO THE BEST
OF MY KNOWLEDGE, INFORMATION AND BELIEF.

ERIN SMITH

___/s/ Richard J. Link___
Richard J. Link, #443609
David P. Weber David P. Weber, #468260
Goodwin Weber PLLC
11115 Lake View Ln #1698
Berlin, MD 21811
(301) 850-7600
richard.link@goodinweberlaw.com
david.weber@goodwinweberlaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this ___ day of _____ 2025, a
copy of the foregoing document was served electronically via this Court's electronic filing
system on Attorney for Defendant, Hughie D. Hunt, Esq..

___/s/ Richard J. Link___
Richard J. Link