UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIN SMITH, et al. | * |
|     Plaintiffs | * |
| v. | *   Case No. 21-CV-02170 |
| DAVID WALLS-KAUFMAN, et al | * |
|     Defendants | * |

## PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. JONATHAN ARDEN

COME NOW the Plaintiffs, by and through undersigned counsel, and file this Opposition to the Motion in Limine to Exclude the Testimony of Dr. Jonathan Arden. The Defendant's motion should be denied. As grounds therefore, Plaintiffs state as follows:

## FACTS

Dr. Jonathan Arden is the former Chief Medical Examiner for the District of Columbia, and has testified over 900 times in various court proceedings. (Report 02/28/25 p. 1) In the instant case, Dr. Arden has reviewed a plethora of evidence, to include the death certificate; autopsy report; autopsy radiographs; Police Officer Jeffrey L. Smith's medical records ("Decedent"); and Decedent's body-worn camera (BWC). (Report 08/13/21, pp. 1-2). Dr. Arden also reviewed the expert reports of Dr. Patrick Sheehan, as well as the report of Dr. Alexander Bardey. Finally, Dr. Arden reviewed the report and synchronized video from Grant Fredericks. (Report 02/28/25, p. 2)

In his report of August 13, 2021, Dr. Arden opines as follows:

1

1.  The acute precipitating event of the death of Jeffrey Smith ("Decedent") was the "occupational exposure to the events of January 6, 2021 (including sustaining a concussion with post-concussion syndrome)."

2.  That there was a direct cause and effect relationship between the work trauma of January 6, 2021, and Decedent's death on January 15, 2021. (Ex. 9, 08/13/21 Report, 2(b)(c))

In his report of February 28, 2025, Dr. Arden opines as follows:

1.  The psychological and physical injuries arising from January 6, 2021, caused emotional trauma and physical injuries to Decedent.

2.  These emotional trauma and physical injuries, in turn, caused depression and behavior changes in the Decedent.

3.  The depression and behavior changes led to Decedent's suicide on January 15, 2021. (Ex. 9, 02/28/25 Report, pp. 2-3)

## ARGUMENT

Defendant has filed a Motion in Limine and argues that Dr. Arden's report and opinion should be excluded for the following reasons:

(1) Dr. Arden's opinion is contradicted (or not supported) by Erin Smith;

(2) Dr. Arden improperly relies on the "social history reports" of Dr. Sheehan;

(3) Dr. Arden does not identify the Kaufman assault as a cause of the Decedent's injuries;

(4) Dr. Arden does not rely on forensic evidence to support his opinion. Plaintiffs will address each of these contentions below.[1]

---

[1] As Defendant notes in his Motion, Dr. Arden agrees with the Virginia Medical Examiner; i.e. that the immediate cause of death was a self-inflicted gunshot wound to the head. There is no dispute on the immediate cause of death. The issue in dispute for the jury is whether Defendant

2

Dr. Arden's testimony should not be excluded based on Plaintiff Erin Smith's deposition testimony. While Erin Smith did not observe any eye-bruising on her husband when he returned home after January 6, 2021, Decedent did advise Ms. Smith that he had engaged in hand-to-hand combat with rioters. (Defendant's Ex. E, Plaintiff's Depo., 39:10-15) [2] Also, Dr. Arden's opinion is that the Kaufman incident caused or contributed to blunt force trauma to the head based on video evidence. In that regard, Erin Smith's observations (as to eye bruising) do not render Dr. Arden's opinions inadmissible. Likewise, Dr. Arden has reviewed the Decedent's medical records and the employee's injury report, and he is fully aware that the Decedent identified the metal pole incident. Even with that information, however, Dr. Arden believes that the Kaufman assault was a substantial factor in the Decedent's physical and psychological injury and resulting death. (Ex. 9, 02/28/25 Report, p. 3).

Dr. Arden properly relied on the social history reports in concluding that Decedent suffered emotional trauma on January 6, 2021. Specifically, Dr. Sheehan and Dr. Bardey conducted collateral interviews with Decedent's surviving spouse; his parents; his co-worker Matthew Givens; childhood friend Andrew Haas; and a dog-walking friend Antje Farmer. (Ex. 11; Dr. Sheehan's report; Ex. 13 - Dr. Bardey's report).

Defendant maintains that these "anecdotal observations, while emotionally compelling, do not meet the evidentiary rigor required for expert causation testimony." (ECF #87, Motion, p. 5) Dr. Sheehan and Dr. Bardey are Board-certified forensic psychiatrists; Dr. Arden is a Board-

---

Kaufman caused or contributed to the death. It is in that regard that Dr. Arden's testimony will be helpful to the jury.

[2] In addition, Defendant himself admits that he scuffled with the police on January 6, 2021, and that he appears in plain view repeatedly on Decedent's BWC video. (Ex. , ¶10 Statement of Facts to Plea; Ex. 6, p. 140:10-15)

certified forensic pathologist. Both of the psychiatrists interviewed people who knew the Decedent in an attempt to understand Jeffrey Smith, and the events that led up to his death. The Defendant does not explain why that is wrong or inappropriate – especially when it is done in a clinical setting by trained professionals and then relied upon by the former Chief Medical Examiner of the District of Columbia, Dr. Arden.

Also, Dr. Arden did not rely on the social history reports to the exclusion of other evidence. Dr. Arden had the benefit of Decedent's medical records. (Ex. 9, 08/13/21 Report). The medical evidence corroborated the information from the collateral interviews that the Decedent did not have a pre-existing condition. This evidence painted a picture of Decedent as somebody who did not have a pre-existing mental health history before January 6, 2021. The picture that emerged was that Decedent dramatically changed after January 6, 2021. Dr. Arden properly relied on his experience as forensic pathologist: "in my experience as a forensic pathologist, it is not uncommon to see a suicide in an individual with no prior mental health issues which is brought on by an acute trigger (like a death, domestic issue or other physical trauma). As detailed by Dr. Sheehan, there is hard and reliable evidence that Jeffrey Smith changed after the physical and emotional trauma and "on January 6, 2021 [] he became withdrawn and upset." (Ex. 9, 08/13/21 Report, p. 3) Dr. Arden also relied on the timing of the death (only 9 days after January 6, 2021) as being a significant factor. (Ex. 9, 08/13/21 Report, p. 3)

Dr. Arden actually wrote two (2) reports. In his initial report of August 13, 2021, Dr. Arden was focused on the metal pole incident. (Ex. 9, 08/13/21 Report, p. 3(d)).  That report was not prepared for purpose of this litigation but rather, was prepared to address whether Decedent's injury and death incurred in the line of duty as a police officer, a determination that Widow Erin

Smith obtained twice, first from the District of Columbia, and then from the U.S. Department of Justice.  Much later, Dr. Arden was provided with two (2) new pieces of evidence: (1) The report from Grant Fredericks, including his synchronized video analysis; and (2) Dr. Bardey's report of 02/21/25. After reviewing this new information, Dr. Arden prepared a supplemental report in which he squarely identified the Kaufman assault as a cause of the Decedent's injuries:

 (a) The trauma of January 6, 2021, was the direct cause of Jeffrey Smith's suicide.

(b) The trauma includes both the psychological and physical trauma caused by Defendant Kaufman when he attacked Jeffrey Smith with his own baton.  (Ex. 9, 02/28/25 Report).

Dr. Arden did not have this information available to him when he wrote his initial report of August 13, 2021.

Defendant argues that Dr. Arden did not rely on forensic evidence in reaching his conclusions. However, Dr. Arden had the benefit of contemporaneous BWC, which showed Decedent's activities on January 6, 2021, and most particularly showed the interaction with the Defendant. Also, based on the detailed frame-by-frame analysis from Grant Fredericks, Dr. Arden was able to observe the Defendant actually grab Officer Smith's baton. This video evidence (together with the narrative of Grant Fredericks) fully supports Dr. Arden's opinion that, more likely than not, Kaufman delivered at least two (2) strikes that impacted or applied forces to defendant's head and face:

> The video analysis demonstrated that Defendant Kaufman struck Jeffrey Smith with his own baton inside the face shield of the helmet, causing his helmet to move rapidly from and to raise the face shield of the helmet, and then struck Jeffrey Smith a second time with the baton, moving Jeffrey Smith backward from the impact.  (Ex. 9, 02/28/25 Report, p. 2)[3]

---

[3] This is shown in the synchronized video and in the Fredericks report.

Dr. Arden is a forensic pathologist – a person who analyzes the cause and manner of death, always after the fact.  After reviewing the video, Dr. Arden clearly believes that the baton incident with Kaufman caused the Decedent's helmet to lift, shift and move. This is not speculation – it is based on video evidence.  A reasonable medical inference from this video evidence is that the video shows the "application of blunt force to the [Decedent's] head". (Ex. 9, Report 02/28/25, p. 2)  Dr. Arden properly applied the facts (the video evidence) to conclude that the Decedent suffered a head injury.  Also, just like Dr. Bardey, Dr. Arden had the benefit of the Decedent's BWC, which showed a marked change in Decedent's behavior and engagement with the crowd after the Kaufman assault, when he becomes immediately withdrawn, long before the metal pole incident. (See Plaintiffs' Opposition to Motion in Limine as to Dr. Bardey, which we incorporate by reference to this Brief in opposition).

Dr. Arden is entitled to rely on the findings and opinions of other experts in formulating his opinion before and after the assault. Rule 703(d) states: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Dr. Arden found: "as was noted in the psychological autopsy [of Dr. Bardey], Jeffrey Smith sustained psychological trauma in the chaotic battle during the storming of the Capitol building, which included psychological trauma inflicted by Defendant Kaufman when he attacked Jeffrey Smith." (Ex. 9, Report, p. 2-3) Dr. Arden thus properly relied on the report of Dr. Bardey, who opined that Decedent suffered psychological trauma on January 6, 2021, which included the incident with Defendant Kaufman.  (Ex. 9, 02/28/25 Report, pp. 2-3)

**CONCLUSION**

In light of the foregoing, the Plaintiffs request that the Motion in Limine regarding Dr. Arden be denied.

        /s/ *Dr. David P. Weber*
Dr. David P. Weber, #468260
Richard J. Link, Esq.
GOODWIN WEBER PLLC
11115 Lake View Ln, #1698
Berlin, MD 21811(301) 850-7600
David.weber@goodwinweberlaw.com
richard.link@goodwinweberlaw.com
Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served, this 26th day of May, 2025, to: Hughie Hunt, Esq. KEMET HUNT LAW GROUP, INC., 7845 Belle Point Drive, Greenbelt, MD 20705  hhunt@kemethuntlaw.com

        /s/ *Dr. David P. Weber*
Dr. David P. Weber