**EXHIBIT** __13__

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIN SMITH, et al.                          *

     Plaintiffs                           *

v.                                          *      Case No. 21-CV-02170

DAVID WALLS-KAUFMAN, et al                  *

     Defendants                           *

## **DECLARATION**

COMES NOW Alexander Sasha Bardey, M.D. with a business address of 303 Fifth Avenue, Suite 403, New York, NY 10016 states as follows:

1.      I am over the age of 18 and competent to testify as to the matters contained herein.

2.      I am a medical doctor (board certified forensic psychiatrist).

3.      I was retained by the law firm of Goodwin Weber, PLLC to perform a psychological autopsy on Jeffrey Smith (and then to offer my opinions based on my investigation).

4.      I prepared a report on February 21, 2025 which contains:

     (a) A description of the documents I reviewed, to include medical records for Jeffrey Smith, medical reports from Dr. Patrick Sheehan and Dr. Jonathan Arden; video evidence, to include Body-Worn Camera; and the report from Grant Fredericks).

     (b) The social history reports I obtained from collateral interviews with the surviving spouse, as well as friends and family of Jeffrey Smith.

     (c) Other documents to include death certificate, autopsy report, and employment records.

5.      My proposed testimony is contained in the report of February 21, 2025. The report contains my findings and ultimate opinions which are contained on pages 9 through 12 of my report and which are incorporated herein by reference. I hold these opinions to a reasonable degree of psychiatric and psychological certainty.

6.      I ultimately found that Jeffrey Smith suffered significant physical and psychological injuries as a result of his experiences on January 6, 2021, specifically the first physical assault at the hands of David Walls-Kaufman, which gave way to acute suicidality, leading to his untimely demise.

Pursuant to 28 USC 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:

5/25/25
Date

*Alexander Bardey MD*
Alexander Sasha Bardey, M.D.



Alexander Sasha Bardey, M.D., PLLC
Miranda Rosenberg, Psy.D.
Ally Epstein, Psy.D.
Amy DeSimon, LMHC

## FORENSIC PSYCHIATRIC AUTOPSY

### JEFFREY L. SMITH

**February 21, 2025**

David Weber, Esq.
Goodwin Weber PLLC
4073 Main Street, 2nd Floor
Chincoteague Island, VA 23336

Dear Mr. Weber,

At your request, we (Alexander Bardey, M.D., and Ally Epstein, Psy.D.) conducted a psychological autopsy of Officer Jeffrey L. Smith who died on January 15, 2021. The purpose of this examination was to assist you in gaining a better understanding of the circumstances surrounding the death of Officer Smith and to assess his mental state at the time of his demise.

As part of this comprehensive psychiatric autopsy, we reviewed the following sources of information:

Legal Discovery:

1. Officer Smith's body worn camera footage, dated January 6, 2021
2. Body worn camera footage from unidentified officers, dated January 6, 2021
3. TheResistance.Video footage, dated January 6, 2021
4. Insurgence USA video footage, dated January 6, 2021
5. Additional video footage of January 6, 2021
6. Picture of Officer Smith's face, timestamped 3:40pm EST
7. Department of the Interior Investigator's Traffic Crash Report, dated January 15, 2021
8. Commonwealth of Virginia Department of Health, Certificate of Death, filed on January 19, 2021, issued on January 21, 2021
9. Commonwealth of Virginia Department of Forensic Science, Certificate of Analysis, authored by Sarah Dersch, dated February 10, 2021
10. Commonwealth of Virginia Department of Health, Office of the Chief Medical Examiner, Report of Autopsy, authored by Jocelyn Posthumus, M.D., completed on January 16, 2021, signed on March 18, 2021

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

11. Commonwealth of Virginia Department of Health, Office of the Chief Medical Examiner, Report of Investigation, dated March 18, 2021

12. Government of the District of Columbia Police and Firefighters' Retirement and Relief Board, Declaration of Dr. Jonathan L. Arden, dated August 13, 2021

13. United States District Court for the District of Columbia, Erin Smith, Representative of the Estate of Jeffrey Smith, v. Dr. David Kaufman and Taylor F. Taranto, Case No. 1:21-CV-2170, Second Amended Complaint, filed May 10, 2022

14. Forensic Video Analysis, authored by Grant Fredericks, dated July 6, 2022

15. Synchronized Event Tracking, generated by Grant Fredericks, dated July 6, 2022

16. Officer Jeffrey Smith, Employment History, no date indicated

17. U.S. Department of Justice, Public Safety Officers' Benefits Office Claim Determination, no date indicated

18. Autopsy images

19. Government of the District of Columbia Police and Firefighters' Retirement and Relief Board, Order Granting Survivor Annuity, no date indicated

Medical and Employment Records:

1. Treatment records from Police and Fire Clinic Associates, LLC, dated June 19, 2015; June 26, 2015; January 27, 2017; May 3, 2017; and April 3, 2019

2. Metropolitan Police Department, Washington, D.C., Officer Performance Rating Form, dated November 18, 2019

3. Metropolitan Police Department, Washington, D.C., Officer Performance Rating Form, dated November 3, 2020

4. Metropolitan Police Department, Washington, D.C., Injury or Illness Report, dated January 6, 2021

5. Metropolitan Police, Corporate Support Bureau Medical Services Division, dated January 7, 2021

6. Treatment records from Police and Fire Clinic Associates, LLC, dated January 6, 2021, and January 14, 2021

7. Forensic Medical Reports, authored by Patrick Sheehan, M.D., dated July 12, 2021, and March 8, 2022

Our opinion is based on the information derived from the present evaluation and our review of the available collateral information provided at the time of this report, included herein. We reserve the right to modify or supplement any conclusions rendered upon receipt of additional pertinent documentation or information.

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

# REVIEW OF RELEVANT EMPLOYMENT AND MEDICAL RECORDS
## PRIOR TO JANUARY 6, 2021

**Employment History:**

Officer Smith's employment with the Metropolitan Police Department (MPD) began in July of 2008. Between July of 2008 and July of 2013, he worked within the Training Division (i.e., "Institute of Police Science.") In July of 2013, Officer Smith began working in the Second District,[1] where he remained working until his death in 2021.[2] Collateral documentation indicates that Officer Smith was hired as an Officer and continued to work in that position throughout his employment with MPD.

According to the reviewed performance rating forms, Officer Smith was in good standing with the Metropolitan Police Department. Between 2018 and 2020, Officer Smith's performance was rated between a "3" indicative of "meets expectations" and a "4" indicative of "exceeds expectations." No issues were raised related to his performance.[3, 4]

**Medical History:** [5]

Officer Smith attended regular biennial physicals with the Police and Fire Clinic. Medical records between 2015 and 2019 document no history of major medical conditions, head injuries, or psychiatric issues. Records from a 2017 physical indicated that Officer Smith suffered from "seasonal allergic rhinitis" for which he took Zyrtec. His substance use was notable only for "moderate" alcohol consumption.

Notably, during each examination, the clinician performed a mental status examination (i.e., an assessment of an individual's mental capacity which typically includes information about appearance, behavior, motor activity, speech, mood, affect, thought process and content, cognition, insight, and judgment). Between 2015 and 2019, Officer Smith's mental status exams were within normal limits (e.g., "alert and cooperative, normal mood and effect, normal attention span and concentration"). During one examination in May of 2017, it was specifically noted that Officer Smith denied psychiatric issues (e.g., "denies anxiety, mental problems and depression") and neurological issues (e.g., "denies headaches, numbness, falling down, weaknesses and tremors").

---

[1] The Second District covers several residential neighborhoods in the Northwest area of the District of Columbia, including but not limited to Chevy Case, Cleveland Park, Foggy Bottom, and Georgetown.
[2] Officer Jeffrey Smith, Employment History, no date indicated
[3] Metropolitan Police Department, Washington, D.C., Officer Performance Rating Form, dated November 18, 2019
[4] Metropolitan Police Department, Washington, D.C., Officer Performance Rating Form, dated November 3, 2020
[5] Treatment records from Police and Fire Clinic Associates, LLC, dated June 19, 2015; June 26, 2015; January 27, 2017; May 3, 2017; and April 3, 2019

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

# DOCUMENTATION RELATED TO OFFICER SMITH'S INJURIES ON JANUARY 6, 2021

## Officer Smith's body worn camera footage, dated January 6, 2021

Officer Smith's body worn camera footage was reviewed in preparation for this report. Throughout the multiple videos, protesters can be heard making demeaning comments and threatening statements towards law enforcement officials and can be observed posturing to fight. The crowd largely disobeyed officers' directives to move out of the area, often becoming acutely agitated and hostile in response to officers' efforts to move them out of the U.S. Capitol. Throughout the footage, there are multiple instances of officers and crowd members engaged in mosh-pit-like brawls where both parties are pushing against one another. In one instance, Officer Smith is close to another police officer who is beaten by a protester and can be seen stumbling out of the area. At times, oleoresin capsicum spray (i.e., pepper spray) was deployed and protesters as well as officers can be observed suffering from the aftereffects (e.g., difficulty breathing and seeing). Overall, the scene appears chaotic and unorganized; at times there is little directive given to officers and at other times, conflicting directives are given. Further, there appears to be general confusion around the layout of the Capitol building and the intricacies of the area. For example, officers attempt to move a crowd of protestors out of a narrow doorway and after doing so, they struggle to keep the crowd from reentering the area they just cleared. In response, Officer Smith and another officer begin discussing efforts to keep the protestors out and Officer Smith asks, "it's the US Capitol…they don't have a way to lock the door?"

Officer Smith can be observed in an altercation with Dr. Wells-Kaufman at approximately 2:56pm, during which Dr. Wells-Kaufman grabs a hold of his baton. Following their altercation, Officer Smith retreated backwards and proceeded to adjust his head gear and face mask. As his squad moved into another area to contain protesters, Officer Smith remained largely disengaged from the crowd.

Later in the footage, Officer Smith is hit with a metal pole that is thrown by an unknown protester in the crowd. Following this, Officer Smith utters, "F*ck" and tells nearby officers that he was hit in the face with a piece of metal. He then proceeded to retreat from the area and into a stairwell where he continuously touched his face and checked his gear (gas mask, helmet). Officer Smith encountered another officer in the stairwell and during their conversation, he informed the officer that he was hit in the face with a piece of metal and reported that he did not feel well and intended to go to the doctor. When the officer asked Officer Smith if he was hurt, he stated, "Yeah probably" and proceeded to discuss again that he was hit by a metal pole. The other officer engaged Officer Smith in a conversation asking which squad he is in, who his sergeant is, and whether he has the number for the sergeant; the other officer can be observed prompting Officer Smith to pay attention to his questions by stating "Hey, hey" while Officer Smith continued to check his helmet. Officer Smith proceeded to walk up the stairs, turn around and walk back down the same set of stairs, and check his gear repeatedly in the stairwell. He then wandered around somewhat aimlessly in an apparent attempt to locate his squad. As he walked

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

around, several officers told Officer Smith to remove his gas mask, which he continued to wear despite being in "a secure area."

When Officer Smith located other officers and resumed duty alongside them, he can be heard informing his peers that he was injured by a metal pole. He explained that he was experiencing neck pain, though his concerns were not taken seriously. In response to his expressed concerns, his peers stated that they were all sore from the intense physical toll of the day, diminishing the significance of Officer Smith's pain. He continued to reiterate that he was hit in the face with metal, but it fell on deaf ears, leading him to turn to one peer and say "nobody cares… but if there's something actually wrong with my neck…"

**Picture of Officer Smith, timestamped 3:40pm EST**

A picture of Officer Smith's face was reviewed in preparation of this report. In the picture, there is visible darkness under Officer Smith's eyes. The picture is timestamped at 3:40pm, meaning it was taken after Officer Smith's encounter with Dr. Wells-Kaufman at approximately 2:56pm, and before Officer Smith was hit in the face with the metal pole at approximately 5:36pm.

**Forensic Video Analysis, authored by Grant Fredericks, dated July 6, 2022**

Mr. Grant Fredericks, a certified forensic video analyst, performed forensic video analysis on multiple sources of media from January 6, 2021, including Officer Smith's body worn camera footage. Mr. Fredericks determined that Dr. Wells-Kaufman and Mr. Taylor Taranto were engaged in physical contact with multiple police officers and "were interfering with the attempted arrest/control of the individuals involved in storming the capitol on January 6, 2021." Mr. Fredericks additionally stated that Dr. Wells-Kaufman can be observed taking control of Officer Smith's baton and making contact with Officer Smith's face and chest; specifically, Mr. Fredericks' opined that Dr. Wells-Kaufman "directed the baton inside the face shield of the Officer's helmet with enough force to cause Officer Smith's face shield and helmet to move rapidly." He concluded that the body worn camera footage "shows that he [Dr. Wells-Kaufman] was in contact with the baton for at least 2.5 seconds."

**Forensic Reports, authored by Patrick Sheehan, M.D., dated July 12, 2021, and March 8, 2022**

Patrick Sheehan, M.D., "prepared a forensic medical report addressing the issues that led up to and caused the death" of Officer Smith.

Dr. Sheehan reviewed relevant medical and employment records and interviewed Officer Smith's wife, parents, friends, and colleagues. During collateral interviews with Officer Smith's wife, Dr. Sheehan was informed that Officer Smith suffered from blurry vision, headaches, and sensitivity to noise and displayed irritability, distractibility, and angry outbursts in the days

following January 6, 2021. Dr. Sheehan ultimately diagnosed Officer Smith with post-concussion syndrome and post traumatic headaches and concluded that Officer Smith's death was brought on by the trauma he suffered at the Capitol, which led to depression and suicide.

## Summary

After reviewing the available discovery, it is evident that Dr. Wells-Kaufman gained control of Officer Smith's baton. Taking into consideration the professional opinion of Mr. Fredericks, a certified forensic video analyst, as well as the image of Officer Smith's face timestamped after his altercation with Dr. Wells-Kaufman where there is dark discoloration under his eyes, the possibility exists that Dr. Wells-Kaufman used Officer Smith's baton to hit him in the face, causing bilateral periorbital ecchymosis (i.e., black eyes) resulting in a possible concussion.

## REVIEW OF RELEVANT MEDICAL AND EMPLOYMENT RECORDS FOLLOWING JANUARY 6, 2021

**Medical records:**

**Treatment records from Police and Fire Clinic Associates, LLC, dated January 6, 2021, and January 14, 2021**

After suffering from injuries on January 6, 2021, Officer Smith was seen at the Police and Fire Clinic. In an intake form completed by Officer Smith on January 6, 2021, he wrote, "I was outside of the US Capitol and people started throwing things metal objects around 5:35pm. Some kind of object hit me in the face shield. Began feeling pain in my neck and face." The "nature of injury" was listed as "pain to neck" and the "cause" was listed as "hit with flying object in face shield of helmet." The provider went on to note the following, "On duty injury as he was controlling the protesters today. He jarred his neck when an object hit his face shield. Pain is localized in his RT side of the neck and is aggravated by neck flexion…No vision changes or dizziness. No fever or chills. No nausea or unsteady gait." After being evaluated at the Police and Fire Clinic, Officer Smith was diagnosed with "Neck Pain, right" and advised to use ice and heat as well as ibuprofen for the pain. Though there is no indication that the clinicians asked Officer Smith about the presence of any particular mental health symptoms (e.g., depression, anxiety, etc.), it was noted that he was "alert and cooperative; normal mood and affect; normal attention span and concentration" during the evaluation.

Officer Smith returned to the Police and Fire Clinic on January 14, 2021, for a follow up appointment. A treating clinician wrote that Officer Smith had presented to the clinic, "after an injury to his neck on the day of the protest in the Capital [sic]. Member states he had twisted his neck when an object hit his fac [sic] shield." The "problem" was listed as "Neck pain, right" and he was again encouraged to use ibuprofen, heat and ice for pain.

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

There is no indication of his mental status at this appointment nor is there any evidence to suggest that the clinician inquired about any psychiatric issues.

## Department of the Interior Investigator's Traffic Crash Report, dated January 15, 2021

A traffic crash report from January 15, 2021, indicated that "vehicle 1 [Officer Smith's vehicle] was traveling northbound on the GW Parkway when it veered to the right, left the roadway and struck a rock wall and numerous trees. Vehicle 1 came to rest in the right woodline [sic] down an embankment with the operator inside the vehicle." The report did not comment on whether Officer Smith's car left the roadway and then he shot himself, or whether he shot himself and his car subsequently left the roadway.

## Commonwealth of Virginia Department of Health, Office of the Chief Medical Examiner, Report of Autopsy, authored by Jocelyn Posthumus, M.D., completed on January 16, 2021, signed on March 18, 2021

In the autopsy report authored by Jocelyn Posthumus, M.D., it is noted that Officer Smith died by a gunshot wound "centered over the right temple;" the manner of death was determined to be suicide. In a section titled "case summary," the following was detailed, "According to investigators, this was a 35-year-old driver with no known medical or psychiatric history who was found dead in his vehicle after it left the roadway with a handgun. Gross examination showed a contact gunshot wound to the right temple with injury to the brain. No bullet or projectile fragments were recovered." Furthermore, an analysis of Officer Smith's blood found no drugs or alcohol in his system.[6]

## Government of the District of Columbia Police and Firefighters' Retirement and Relief Board, Declaration of Dr. Jonathan L. Arden, dated August 13, 2021

Jonathan Arden, M.D., reviewed relevant medical records as well as Dr. Sheehan's 2021 report and concluded that "the precipitating event that caused the death of Officer Smith was his occupational exposure to the traumatic events (including sustaining a concussion with post-concussive syndrome) that he suffered on January 6, 2021, in connection with his duties as a Metropolitan Police Officer of the District of Columbia."

## Employment records:

## Metropolitan Police, Corporate Support Bureau Medical Services Division, dated January 7, 2021

Following his injuries on January 6, 2021, the Corporate Support Bureau Medical Services Division determined that "the member [Officer Smith] has reported a compensable work-related

---

[6] Commonwealth of Virginia Department of Forensic Science, Certificate of Analysis, authored by Sarah Dersch, dated February 10, 2021

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

injury or illness pursuant to the Police and Firefighters Retirement and Relief Act. In accordance…the member shall be entitled to non-chargeable medical leave and administrative pay…" The Corporate Support Bureau Medical Services Division came to this determination after reviewing records from the Police and Fire Clinic which indicated that Officer Smith was injured while on duty and was subsequently evaluated by clinicians on January 6, 2021, who diagnosed him with "neck pain, right." As of January 7, 2021, Officer Smith was placed on sick leave.

### Government of the District of Columbia Police and Firefighters' Retirement and Relief Board, Order Granting Survivor Annuity, no date indicated

Following Officer Smith's death, the Police and Firefighters Retirement and Relief Board issued an order granting Erin Smith (widow of former Metropolitan Police Officer Jeffrey Smith) a survivor annuity "equal to 100% of Officer Smith's pay at the time of his death." The reviewed document indicates that this decision was based on evidence that "Officer Smith sustained a personal injury on January 6, 2021, while performing his [work] duties and that his injury was the sole and direct cause of his death" on January 15, 2021.

### U.S. Department of Justice, Public Safety Officers' Benefits Office Claim Determination, no date indicated

Documentation from the public safety officers' benefits office indicated that Officer Smith's death by suicide was the result of injuries he sustained in the line of duty. As a result of this determination, his wife, Erin Smith, was provided with "the entire benefit amount" of $370,000.

### COLLATERAL INTERVIEWS

Multiple licensed clinicians, including Drs. Bardey and Epstein, completed collateral interviews with the same individuals (Mrs. Erin Smith; Mr. Richard Smith; Mr. Andrew Haas; Ms. Antje Farmer; Mr. Matthew Given) who were interviewed by Dr. Sheehan in 2021 and 2022. During these interviews, each source provided information that was consistent with their interviews with Dr. Sheehan.

Notably, each collateral source denied that Officer Smith had any prior psychiatric issues or had ever sought psychiatric treatment. Officer Smith's father similarly denied that his son suffered from a head injury throughout his upbringing. Mrs. Smith reiterated that she noticed significant changes in her husband's mood, behavior, and personality after January 6, 2021, characterized by his becoming distant and less talkative, irritable, and isolative. She additionally reported that he was not sleeping well, in that she often awoke to him pacing and found him crying. Mrs. Smith additionally stated that her husband complained of sensitivity to light, head and neck pain, and problems with his vision. These changes were in stark contrast to her

husband's typical even keeled and joyful personality. Notably, when Mrs. Smith was asked whether Officer Smith presented with visible injuries after January 6, 2021, she posited that her husband may have had "bruising under his eyes" but she was not able to conclusively recall whether she observed this type of injury.

Further, Ms. Antje Farmer reported that Officer Smith's personality changes were evident by his becoming more "short;" whereas she described him as someone who was typically eager to share his point of view and to talk about significant events, Officer Smith was noticeably less descriptive and talkative after January 6, 2021. When asked whether Officer Smith shared any information with her regarding the events of January 6, 2021, Ms. Farmer reported that he did not share much information but did inform her that he heard yelling on the radio about shots being fired "in the beginning" [Note: Ashli Babbitt is reported to have been shot at approximately 2:45pm, minutes before Officer Smith encountered Dr. Wells-Kaufman].[7]

## OPINION

There is unequivocal evidence that Officer Smith had no prior psychiatric history or major medical conditions, and he was in good standing with the Metropolitan Police Department as of January 6, 2021.

Officer Smith experienced significant physical and psychological symptoms after his Metropolitan Police Department squad was assigned to provide assistance in the U.S. Capitol on January 6, 2021. Physically, he suffered a head injury which resulted in postconcussive symptoms. Evidence for this injury and resultant symptoms is supported by multiple sources. Firstly, as seen in Officer Smith's body worn camera footage, he was hit by a metal pole at approximately 5:36pm and following this injury, he displayed disorientation, confusion, and impaired concentration. In the hours and days following the injury, Officer Smith informed his wife of various symptoms consistent with postconcussive symptoms, including blurred vision, sensitivity to light, and headaches, and Mrs. Smith additionally observed her husband to be more irritable and short-tempered than usual. Reviewed medical records support the fact that Officer Smith incurred an injury to his head and neck while on duty on January 6, 2021, for which he experienced significant pain. Furthermore, the possibility exists that Officer Smith sustained an injury to his face after being assaulted by Dr. Wells-Kaufman; a picture of Officer Smith's face shows discoloration under his eyes consistent with Dr. Wells-Kaufman having "directed the baton inside the face shield of the Officer's helmet with enough force to cause Officer Smith's face shield and helmet to move rapidly," as was opined by Mr. Fredericks, a certified forensic video analyst.[8] However, the fact that none of Officer Smith's peers made note of his black eyes throughout the reviewed body camera footage despite his removing his helmet and exposing his face in front of them; that records from the Police and Fire Clinic did not mention Officer Smith presenting with black eyes

---

[7] CNN Article, on Ashli Babbitt's death, dated June 18, 2021
[8] Forensic Video Analysis, authored by Grant Fredericks, dated July 6, 2022

or his having suffered an injury prior to being hit with the metal pole; and that Mrs. Erin Smith was unable to conclusively recall whether she observed her husband to have visible facial injuries including black eyes renders unclear whether and the extent to which Officer Smith was physically assaulted by Dr. Wells-Kaufman.

While it is unclear how severe Officer Smith believed his physical injuries to be, reviewed body camera footage indicated that his peers responded to his expressed concern by making light of their own discomfort and pain despite his reiterating his pain several times; his peers' apparent lack of concern for his injuries led Officer Smith to state, "they're notified…nobody cares," a sentiment that he internalized, leading him to brave his injuries without making a fuss of them. Such a sentiment is in line with stigma in law enforcement to *grin and bear it* [emotional and physical injuries] despite underlying personal concerns for safety and pain; indeed, Officer Smith posited whether his injuries were severe after his peers dismissed him, stating, "but if there's something actually wrong with my neck…" From this perspective, it can be understood that Officer Smith minimized the extent of his injuries to clinicians at the Police and Fire clinic, as the message that was engrained in him by his peers in combination with the stigma around voicing an injury as a member of law enforcement was essentially, *we've all been through this, we're all in pain, man up.*

In addition to suffering from at least one physical injury, Officer Smith suffered from a significant psychological injury as a direct result of his experiences on January 6, 2021. Firstly, Officer Smith's actions throughout the day, observed via his body worn camera footage, are suggestive of someone who began his assignment ready for action but quickly became overwhelmed and powerless after being exposed to the hostile, threatening crowd that was dismissive of law enforcement's directives, specifically the actions of the defendant, Dr. David Wells-Kaufman. On January 6, 2021, Officer Smith entered into the unfamiliar territory of the U.S. Capitol, a labyrinth of hallways and doorways even when it is not under siege, and he did this while wearing protective gear (helmet, gas mask). Throughout his 12-year career as a police officer, Officer Smith worked within the second district, consisting largely of residential neighborhoods such as Chevy Chase, Foggy Bottom, and Georgetown. According to a Metropolitan Police Department Annual Report in 2020, the second district had the lowest percentage of firearms recovered (i.e., First District 9%, Second District 7%, Third District 9%, Fourth District 8%, Fifth District 14%, Sixth District 23%, Seventh District 29%) and had -33% violent crime and -33% property crime between 2019 and 2020.[9] Officer Smith was not well-equipped to respond to the level of violence that befell him and his squad members on January 6, 2021.

The video footage from multiple sources supports the fact that the officers responding to the riot were unprepared, overwhelmed, and unsuspecting of the level of violence and threat that they encountered; the rioters entered the U.S. Capitol in endless droves, outnumbering the officers tasked to defend the Capitol. According to collateral interviews, Officer Smith informed a friend that he overheard shots being fired "in the beginning" of his assignment at the Capitol,

---

[9] Metropolitan Police Department Annual Report, 2020

which would incite a great deal of fear, confusion, and uncertainty about what he was heading into. With that already tense and overwhelming framework in the background, Officer Smith was then directly exposed to significant psychological trauma on January 6, 2021, as a result of his assault by Dr. Wells-Kaufman and resulting possible physical trauma. Video footage of the altercation showed a clearly chaotic scene wherein protesters engaged in physical violence with officers including Officer Smith. During his altercation with Dr. Wells-Kaufman, Officer Smith can be seen extending out his baton in an effort to create distance between him and the rioters; however, Dr. Wells-Kaufman gained control of Officer Smith's baton and proceeded to use it against him. For Officer Smith, an officer who worked largely in a docile environment, becoming engaged in a physical altercation with a hostile rioter and having a tool meant to ensure his own safety suddenly in the hands of a threatening protester was a profoundly terrifying experience. As a testament to the fear Officer Smith experienced, he can be observed on body camera footage retreating from the police line after he regained control of his baton. It would follow that as Officer Smith and his squad moved onto another area of the U.S. Capitol to engage with rioters, Officer Smith's anxiety around his safety manifested as keeping his distance from the protestors while his squad members interacted directly with them. Feelings of anxiety became exacerbated by concerns of helplessness, uncertainty, and fear for his safety when Officer Smith and fellow officers struggled to stop protesters from re-entering an area they had just cleared. Indeed, as the situation was ongoing, Officer Smith asked a nearby officer, "it's the US Capitol…they don't have a way to lock the door?" evidencing his unfamiliarity with the building and concern for potential conflict with the rioters. Officer Smith's experience of psychological trauma (i.e., fear for his safety) was further cemented by his physical injury, namely, being hit in the face with a metal pole.

The events of January 6, 2021, represented a shocking and horrifying existential crisis for Officer Smith, ultimately altering his perception about his future as a police officer, his own safety, and order in the world. As described by his father during a collateral interview, Officer Smith began to question his future as a police officer once the public opinion of police officers shifted to become more adversarial. These passive concerns came to a head in the days following January 6, 2021, as he reflected on the events of that day; on a day where he was asked to defend one of the United States' most important landmarks, a hostile crowd made demeaning comments towards him and his profession, hurled threats at him, engaged in physical altercations with him, and ultimately put his life in jeopardy. Following that day, Officer Smith grappled with questions around the sanctity of his role as a police officer, the respect that his title holds, and/or concerns over future, similar demonstrations in stark opposition to the police.

On January 6, 2021, while responding to the riot in the U.S. Capitol, Officer Smith was exposed to significant threats to his life, including his assault by Dr. Wells-Kaufman; he additionally suffered from a head injury after being hit with a metal pole. In response to the traumatic events that he encountered on January 6, 2021, Officer Smith developed emotional and behavioral symptoms consistent with a trauma-based psychiatric disorder (e.g., increasingly isolative and less talkative, irritable, crying), which had a significant impact on his functioning across multiple areas (e.g., interpersonally and socially, occupationally, etc.). Following January 6, 2021, Officer Smith did not return to work, became less responsive to and engaged with family

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

and friends, and evidenced little motivation to engage in once pleasurable activities (e.g., walking the dog, calling his parents). These symptoms meet the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision (DSM-5-TR) criteria for a trauma-related diagnosis, namely adjustment disorder, with mixed disturbance of emotions (e.g., depression) and conduct. As delineated by the DSM-5-TR, "adjustment disorders are associated with an increased risk of suicide attempts and suicide."[10] In response to the manifestation of acute behavioral and emotional symptoms, the result of his experiences on as well as the head trauma from January 6, 2021, Officer Smith ended his life on January 15, 2021.

As mentioned above, Officer Smith's injuries were both psychological and physical; while his physical injury and resultant physical pain may have been overt to those around him and to treating clinicians at the Police and Fire Clinic, the psychological injury simmered below the surface. Because Officer Smith put on a brave face, his symptoms were recognized largely by friends and family to be a reflection of his exhaustion and physical pain from the events of January 6, 2021; meanwhile, his mental state was quietly deteriorating. Ultimately, it was on his drive back to work nine days later when the weight of this unresolved trauma became overwhelming and too much to bear, leading to his untimely demise.

It is worth reiterating that reviewed medical records and collateral interviews indicate that Officer Smith had no prior psychiatric history; his postconcussive and trauma-related symptoms emerged as the direct result of the events of January 6, 2021, set in motion by his altercation with Dr. Wells-Kaufman, the combination of which served to cement his existential concerns about his future as a police officer. At the moment Dr. Wells-Kaufman took hold of Officer Smith's baton and attempted to use it against him, he experienced significant fear for his safety while in the line of duty. Finally, it would be remiss not to mention the significance of the manner and timing of Officer Smith's death; reviewed documents indicate that Officer Smith died while driving on the GW Parkway enroute to work on January 15, 2021, the day he would be returning to work after being out on sick leave since January 6, 2021. That Officer Smith, an officer in good standing with the Metropolitan Police Department with no prior psychiatric history, would take his own life rather than face returning to his assigned duties, underscores the significance of the psychological injury he suffered and the acutely depressed and suicidal state he was in on January 15, 2021.

In summary, it is our opinion, within a reasonable degree of psychiatric and psychological certainty, that Officer Smith suffered significant physical and psychological injuries as a direct result of his experiences on January 6, 2021, specifically the first physical assault at the hands of Dr. Wells-Kaufman, which gave way to acute suicidality, leading to his untimely demise.

---

[10] American Psychiatric Association. (2022). Diagnostic and statistical manual of mental disorders (5th ed., text rev.).https://doi.org/10.1176/appi.books.9780890425787

*Forensic Psychiatric Autopsy*
*Jeffrey Smith*

Respectfully submitted,

**Ally Epstein, Psy.D.**
**FIFTH AVENUE FORENSICS**
Licensed Clinical Psychologist

**Alexander Sasha Bardey, M.D**
**FIFTH AVENUE FORENSICS**
Diplomate in Psychiatry and Forensic Psychiatry, American Board of Psychiatry and Neurology
Assistant Professor, Department of Psychiatry, New York University Langone Medical Center
Adjunct Assistant Professor, Department of Psychiatry and Behavioral Sciences, New York Medical College

ALEXANDER SASHA BARDEY M.D.
FORENSIC AND GENERAL PSYCHIATRY

# EXPERT TESTIMONY AND DEPOSITIONS
## 2019-2024

### Testimony in criminal cases

| Date | Case | Jurisdiction | Legal Issue | Retained by |
|------|------|-------------|-------------|-------------|
| 1/19 | NY v. Feliz-Volquez | Bronx | Criminal Responsibility | Defense |
| 2/19 | NJ v. Lomando | Bergen, NJ | Diminished Capacity | Defense |
| 3/19 | NY v. Chisolm | Kings | Competency to waive Miranda | Prosecution |
| 5/19 | NY v. Harrison | Suffolk | Criminal Responsibility | Defense |
| 6/19 | NY v. Leonard | Suffolk | Mens Rea | Defense |
| 9/19 | NY v. Tall | Suffolk | SORA | Defense |
| 1/20 | NY v. Stetson-Shanahan | Queens | Criminal Responsibility | Defense |
| 6/20 | USA v. L. Pina | SDNY | Compassionate Release | Defense |
| 8/21 | NY v. Martunovich | Kings | Criminal Responsibility | Defense |
| 3/23 | NY v. Acosta | Bronx | PTSD/memory | Defense |
| 3/23 | NY v. Franco-Martinez | Nassau | EED | Defense |
| 5/23 | NY v. Raqwah Johnson | Albany | Grand Jury | Defense |
| 10/23 | NY v. JC Jimenez | Bronx | Intent | Defense |
| 11/23 | NY v. An | Queens | Criminal Responsibility | Defense |
| 5/24 | NY v. Munera | New York | EED | Defense |

### Testimony in civil cases

| Date | Case | Jurisdiction | Legal Issue | Retained by |
|------|------|-------------|-------------|-------------|
| 4/19 | Wellner v. NYC | New York | Personal Injury | Plaintiff |
| 5/19 | In Re. Gandy | Suffolk | 330.20 | Respondent |
| 7/19 | In Re. Watson | Kings | 330.20 | Prosecution |
| 9/19 | In re. Bueno-Edwards | Albany | Fitness to work | Respondent |
| 1/20 | In Re. Newcomb | Orange | 330.20 | Respondent |
| 7/21 | In Re. Maniscalco | New York | Fitness to work | Respondent |
| 8/21 | In Re. Marzolf | Monroe | 330.20 | Plaintiff |

*Alexander Sasha Bardey, M.D.*

| 8/21 | In Re. McKelvey | Suffolk | 330.20 | Respondent |
|---|---|---|---|---|
| 10/21 | In Re. V. Rosado | New York | Disability | Claimant |
| 12/21 | In Re. Barkdale-Powell | Orange | 330.20 | Defendant |
| 3/22 | Youwanes v Steinbrech | New York | Malpractice | Plaintiff |
| 7/22 | In Re. W. Goldin | New York | Disability | Plaintiff |
| 10/22 | Rapp v. Fowler (Spacey) | SDNY | CVA | Defendant |
| 6/23 | NYS vs. Bernard, Jose | Kings | Article 10 | Petitioner |
| 2/24 | In re. J. Ferrufino | New York | 330.20 | Petitioner |
| 4/24 | In Re. An | Queens | 330.20 | Defendant |

## Depositions

| Date | Case | Jurisdiction | Legal Issue | Retained by |
|---|---|---|---|---|
| 5/19 | Rene v. Brunswick Hospital | Suffolk | Personal Injury | Defendant |
| 5/21 | Styller v. Hewlett-Packard | US District Court, District of MA | Personal Injury | Plaintiff |
| 11/21 | Hill v. Addabbo and Kesselly | EDNY | Sexual Harassment | Defendant |
| 1/22 | Rapp v. K. Fowler aka Spacey | SDNY | Sexual Abuse | Defendant |
| 10/22 | Doe c. Stephen Cuchel | EDNY | Sexual Abuse | Defendant |
| 8/23 | Czernyk v. Bongiovanni | Bronx | Sexual abuse | Defendant |
| 4/24 | J. Doe v. Bemer | Connecticut | Sexual Abuse | Defendant |
| 6/24 | N. Moore v. Planned Parenthood Federation of America | SDNY | Racial Discrimation | Plaintiff |

ALEXANDER SASHA BARDEY M.D.
## FIFTH AVENUE FORENSICS
303 FIFTH AVENUE, SUITE 403, NEW YORK, NY 10016
TELEPHONE: (212) 532-2322        FAX: (212) 532-2219

E-MAIL: DRBARDEY@FIFTHAVENUEFORENSICS.COM
WEBSITE: WWW.FIFTHAVENUEFORENSICS.COM
NEW YORK STATE LICENSE: 179638

## EDUCATION

| | |
|---|---|
| 1989 - 1992 | Resident in General Psychiatry, NYU Medical Center, NY |
| 1988 - 1989 | Intern in General Psychiatry, NYU Medical Center, NY |
| 1988 | M.D., SUNY at Stony Brook Medical School, NY |
| 1983 | B.A., Harvard University, MA |

## LICENSURE AND CERTIFICATION

| | |
|---|---|
| 1996, 2015 | Added Qualifications in Forensic Psychiatry, The American Board of Psychiatry and Neurology |
| 1994, 2005, 2015 | Diplomate in Psychiatry, The American Board of Psychiatry and Neurology |
| 1989 | New York State Medical License |

## PROFESSIONAL APPOINTMENTS

**Fifth Avenue Forensics**

**City of Albany**. Provide psychological services, evaluations, and reports of municipal employees, including police officer candidates. (2020-2021)

**County of Rockland, Department of General Services**. Provide pre-employment psychological screenings, fitness for duty examinations, and civil service Article 72 psychological exams. (2018-present)

**Center For Justice Innovation**. Provide consultative psychiatric services to the New York State Unified Court System and the Center for Justice Innovation, a project of the Fund for the City of New York. Perform psychiatric evaluations, risk assessments and submit expert reports to the Court in order to determine eligibility for participation in the specialized court project and support applications for housing, treatment and case management services, for the following Alternative to Incarceration Programs:

- Manhattan Felony Alternative to Incarceration (ATI) Court. A project of the Fund for the City of New York. These services are supported by the NYS Office of Court Administration (OCA) and the Manhattan District Attorney's Office (DANY). (2019-present)

- Brooklyn Mental Health Court. A project of the Fund for the City of New York. These

Alexander Sasha Bardey, M.D.

services are supported by NYS Office of Mental Health (OMH). (2014-present)

- Brooklyn Alternative to Incarceration (ATI) Court. Center for Court Innovation, a project of the Fund for the City of New York. These services are supported by New York City Council. (2020-present)

**County of Nassau, Department of Mental Health, Chemical Dependency, and Developmental Disabilities Services.**

- Director of Forensic Psychiatry (2017-present)

- Nassau County Mental Health Court. Participate in the development and implementation of the Nassau County Mental Health Court. Provide clinical leadership, perform psychiatric evaluations and risk assessments, and submit expert forensic-psychiatric reports. Co-lead weekly clinical-judicial meetings regarding ongoing court operations and member participation. (2007 – present)

- Assisted Outpatient Treatment Program. Provide clinical leadership in Assisted Outpatient Treatment Program (Kendra's Law). Perform psychiatric assessments for eligibility and provide expert testimony in County Supreme Court. Oversee the implementation of the law and participate in programmatic development. Lead and supervise clinical review team. (2002 – present)

**Private Forensic Practice**

- Qualified as an expert in Psychiatry and Forensic Psychiatry in Criminal, Civil, Family, and Supreme Courts in New York, Kings, Queens, Richmond, Bronx, Westchester, Nassau and Suffolk Counties, as well as in Federal Courts in the Eastern and Southern Districts of New York and Criminal and Civil Courts in New Jersey, Massachusetts and Connecticut. Consult with attorneys from the United States Attorney's office, the New York District Attorney's office, The Federal Defender Program, the Capital Defender Program and The Legal Aid Society in Criminal and Civil matters. (1993 - present)

**Private Clinical Practice**

- Provide psychiatric evaluations and treatment, specializing in pharmacological management of affective and psychotic disorders. (1992 – present)

**Director of Psychiatry, Rikers Island, Prison Health Services, Inc.**

- Administer and clinically oversee for the NYC Health and Hospitals Corporation - Correctional Health Services' contracted private vendor. Ensure the provision of clinical services within the guidelines of regulatory and funding agencies including the NYC Department of Public Health, NYS Office of Mental Health, NYS Office of Alcoholism and Substance Abuse Services, NYC Commission on Correction, and NYS Board of Corrections. Provide direct clinical and administrative oversight for 200 clinical full-time staff. (2000 – 2002)

Alexander Sasha Bardey, M.D.

**Director, Assisted Outpatient Treatment Program (Kendra's Law), Bellevue Hospital, NY**

- Administer a hospital based forensic initiative. Develop program implementation, policy and procedures. Design and maintain a NYC grant funded budget. Provide data coordination and reporting of utilization and statistical measures to NYS Office of Mental Health and NYC Department of Mental Health and Mental Retardations Services. Supervise clinical and support staff. (1999- 2000)

**Associate Director, Division of Forensic Psychiatry, Bellevue Hospital, NY**

- Deputy direct the division of Forensic Psychiatry, including provision of clinical and evaluation services. Manage and supervise psychiatric and support staff. Oversee JCAHO and DMH survey preparations, and report UR/QA initiatives. Provide clinical supervision of forensic psychiatric fellows, psychiatric residents, and medical students. (1995 – 1999)

## ACADEMIC APPOINTMENTS

| | |
|---|---|
| 2018 - Present | Clinical Assistant Professor in Psychiatry, NYU School of Medicine |
| 2003 - Present | Adjunct Assistant Professor in Psychiatry and Behavioral Sciences, New York Medical College |
| 1992 - 2018 | Clinical Instructor in Psychiatry, NYU School of Medicine |
| 1989 - 1992 | Assistant Clinical Instructor in Psychiatry, NYU School of Medicine |

## ADDITIONAL PROFESSIONAL POSITIONS

| | |
|---|---|
| 1993 - 1995 | Attending Psychiatrist, Division of Forensic Psychiatry, Bellevue Hospital |
| 1992 - 1993 | Attending Physician, Division of Consultation-Liaison Psychiatry, Bellevue Hospital |
| 1992 - 1993 | Attending Physician, St. Francis Residence |
| 1990 - 1992 | Attending Physician, Psychiatric Admitting Office, Bellevue Hospital |

## COMMITTEE ASSIGNMENTS

| | |
|---|---|
| 2023 - present | State of New York, Unified Court System, NYS Judicial Task Force on Mental Illness |
| 1996 - 1997 | JCAHO Task Force, Bellevue Hospital |
| 1996 - 1997 | Search Committee for Medical Director in Psychiatry, Bellevue Hospital |
| 1993 - 1994 | Advisory Council to the Executive Director, Bellevue Hospital |
| 1992 - 1994 | Faculty Academic Affairs Committee, Bellevue Hospital |
| 1989 - 1991 | Admissions Committee, Department of Psychiatry, NYU School of Medicine |

## TEACHING EXPERIENCE

| | |
|---|---|
| 2023 - Present | Supervising Forensic Psychiatrist to NYU Grossman School of Medicine's Forensic Psychiatry Fellowship |

Alexander Sasha Bardey, M.D.

| 2004 - 2010 | Course Director, Forensic Psychiatry, St. Vincent's Catholic Medical Center, NY |
| 1999 - 2000 | Supervising Psychiatrist, NYU Forensic Psychiatry Residency, Department of Psychiatry, NYU School of Medicine |
| 1999 - 2000 | Supervising Attending Psychiatrist, Elective in Telepsychiatric Consultation, NYU School of Medicine |
| 1995 - 1999 | Director, Medical Student Education, Division of Forensic Psychiatry, Bellevue Hospital |
| 1995 - 1999 | Lecturer in the Forensic Psychiatry Course to Psychiatry Residents, NYU Department of Psychiatry |
| 1994 - 1999 | Lecturer in Suicide Prevention and Management Seminar for the Department of Corrections |
| 1994 - 1999 | Lecturer in Psychopharmacology Course in the Psychology Department, Bellevue Hospital |
| 1993 - 2002 | Supervising Attending Psychiatrist, Tisch Hospital |
| 1993 - 2000 | Supervising Attending Psychiatrist, Forensic Psychiatry Fellowship, NYU Department of Psychiatry |
| 1992 - 2000 | Psychopharmacology Supervisor, Psychopharmacology Clinic, Bellevue Hospital |
| 1992 - 1994 | Psychotherapy Supervisor, Mental Hygiene Clinic, Bellevue Hospital |
| 1991 - 1993 | Supervising Attending Psychiatrist, Psychiatric Emergency Room, Bellevue Hospital |
| 1991 - 1992 | Instructor in a didactic course on psychopathology, NYU School of Medicine |
| 1990 - 1991 | Instructor in a didactic course on human behavior, NYU School of Medicine |

## MEMBERSHIPS IN PROFESSIONAL SOCIETIES

| 1995 - Present | American Board of Forensic Examiners |
| 1990 - Present | American Medical Association |
| 1992 - 1995 | American Group Psychotherapy Association |
| 2017 - Present | International Association of Chiefs of Police |
| 2017 - Present | Association for the Treatment of Sexual Abusers |

## PUBLICATIONS AND EDITORSHIPS

Bardey A.S. and Berger R.H. (1997). Confidentiality and Privilege. Primary Psychiatry, 4 (8), 19 - 26.

Bardey A.S. and Berger R.H. (1997). Informed Consent. Primary Psychiatry, 4 (9), 9 - 21.

Bardey A.S. and Berger R.H. (1997). Malpractice. Primary Psychiatry, 4 (10), 14 - 21.

Bardey A.S. and Berger R.H. (1997). Dangerousness. Primary Psychiatry, 4 (11), 14 - 21.

Bardey A.S. and Berger R.H. (1997). Telemedicine and Telepsychiatry. Primary Psychiatry, 4 (12), 14 - 16.

Bardey A.S. and Berger R.H. (1998). Malingering. Primary Psychiatry, 5 (2), 24-36.

Alexander Sasha Bardey, M.D.

## PRESENTATIONS

Bardey, A.S. and Rosenberg, M. (2024) Presentation to the Nassau County Elder Abuse Multidisciplinary Team, New York, NY.

Bardey, A.S., Lapinta, A., Prof. Kramer, L.S., (2024, 2023, 2022, 2021, 2020, 2019). Selected Topics in Trial Advocacy, Examination of Expert Witness, Touro Law School, East Islip, NY.

Bardey A.S. Bardey and Rose, D, (2024) Presentation on Assisted Outpatient Treatment to the Legislative Committee Meeting of the 2024 Legislative Session, 446th Session of General Assembly, Maryland Correctional Administrators Association. Online.

Bardey, A.S., Rosenberg, M. (2023, 2022) Criminal Responsibility and the Application of Psychological Testing. Presented at the Kirby Forensic Psychiatric Center. New York, NY.

Bardey, A.S., Barber Rioja, V., Kendrick, J., DeAvila, K., (2022) Mental Health In the Prison System, Touro Law School, East Islip, NY.

Bardey, A.S., Bailey, P, Vassalo, R, (2020). Forensic Evaluations and Reports, Continuing Legal Education presentation, CUCS Academy for Justice-Informed Practice. Online.

Bardey, A.S., (2020). Twenty Years of AOT in New York: What Have We Learned? New York State Office of Mental Health state-wide grand rounds, Albany, NY.

Bardey, A.S., Carmenaty, R., Carle, D., Gorinsky, J., and Butchin, J. (2018). Nassau County Bar Association, Mental Health Subcommittee Continuing Legal Education presentation: Kendra's Law: The Case for Coercive Care. Bar Association, Mineola, NY.

Bardey, A.S. (2018). New State Office of Mental Health, Long Island Field Office, Psychiatric In-service: Psychopharmacology Update. Pilgrim Psychiatric Center, Brentwood, NY.

Bardey, A.S., Klein, F.B., and La Pinta, A.M. (2016). New York State Bar Association, Criminal Justice Section, Spring Meeting: Trials Without "Who Done It" But Why. Montauk Yacht Club, Montauk, NY.

Bardey, A.S. and Dolan, J.R. (2015). The 6th Annual Conference on Co-Occurring Disorders: Forensic Mental Health and Chemical Dependency Services for Criminal and Juvenile Justice, Keynote Presentation: We Thought We Knew – No Let's Get It Right. Hofstra University, Uniondale, NY.

Bardey, A.S. (2015). Psychiatric Disorders, Co-Occurring Disorders and Medications. Crisis Intervention Training, Hempstead Police Department, Hempstead, NY.

Bardey, A.S. (2015) Infanticide: The Psychology of an Unnatural Act. Arizona Homicide Investigators Association, annual meeting, Las Vegas, NV.

Alexander Sasha Bardey, M.D.

Bardey, A.S., Ser, J., Esq., Gombiner, M., (2015) Sex Offender Evaluations: What They Are and What They Mean. The Federal Defenders of New York, Inc., CLE Program, New York, NY.

Bardey, A.S., Hon. McCarthy, W.E., Prof. Cucolo, H., Leo, D. (2015) Sexual Offenders and Post Incarceration MHL Article 10 Civil Commitment and SORA Proceedings. 2015 Joint Seminar of the First, Second, Third & Fourth Judicial Departments of the Appellate Division of the Supreme Court of the State of New York, New York, NY.

Bardey, A.S., Termini, K., Prentky, R. (2014) Psycho-Sexual Evaluation Training. Federal Defenders of New York, Inc., Southern District of New York, New York, NY.

Bardey, A.S. (2014). Emotionally Disturbed Persons Response Team Training Course. Morrelly Homeland Security Center, Bethpage, NY.

Bardey, A.S. (2013). Psychotropic Medications and Co-Occurring Disorders. Mental Health Association of Nassau County, Hempstead, NY.

Bardey, A.S. (2012). Psychiatric Disorders, Co-Occurring Disorders and Medications. Crisis Intervention Training, Nassau and Suffolk County Parole/Probation, Hempstead, NY.

Bardey, A.S. (2011). Psychiatric Disorders, Co-Occurring Disorders and Medications. Crisis Intervention Training, Hempstead Police Department, Hempstead, NY.

Bardey, A.S. (2010). Psychotropic Medications and Interactions with Street Drugs. Lecture to FEGS Health and Human Services System, Hempstead, NY.

Bardey, A.S. et al. (2010). Nassau County Mental Health Court – Psychiatric Perspective. Continuing Legal Education presentation to the Nassau County Bar Association, Garden City, NY.

Bardey, A.S., Ruthen, H. (2008). Mentally Disabled People in Crisis. Presentation to the Nassau County Police Department, Garden City, NY.

Bardey, A.S., Lynch, C. (2008) Continuing Legal Education presentation to the Kings County District Attorney's Office: Extreme Emotional Disturbance. Brooklyn, NY.

Bardey, A.S. (2008). The Case for Coercive Care – Kendra's Law in Nassau County. Webinar to the Office of Court Administration.

Bardey, A.S., Nolan, J. (2008 and 2006). Assessing for Serious Mental illness – Overview. Presentation to Nassau County Department of Social Services, Hempstead, NY.

Bardey, A.S. (2008). The case for Coercive Care – Kendra's Law in Nassau County. Grand Rounds presentation at North Shore University Hospital at Manhasset, NY.

Bardey, A.S. (2007). Working with the Difficult to Engage Client. Presentation to the Mental Health Association of Nassau County, NY.

Alexander Sasha Bardey, M.D.

Bardey, A.S. (2007) Stop treating the Incarcerated Mentally Ill. Presentation to the World Association for Psychiatric Rehabilitation, NY.

Bardey, A.S. (2006) Mental Illness and the Criminal Justice System – An Unfortunate Alliance. Continuing Legal Education presentation to the Suffolk Bar Association, East Islip, NY.

Bardey, A.S. (2006). Working with the Challenging Client. Presentation to the Mental Health Association of Nassau County, NY.

Bardey, A.S. (2005). Assisted Outpatient Treatment: Five-Year Update and Experience. Grand Rounds presentation at North Shore University Hospital at Glen Cove, NY.

Bardey, A.S., Zdanowicz, M. & Barr, H. (2004). Coercion and Treatment, Medical, Legal, and Ethical Issues. American Psychiatric Association Annual Meeting.

Bardey, A.S. (2003). Forensic Mental Health. Mental Health Judicial Conference. NY.

Bardey, A.S. (2003). Mad or Bad – the Mentally Ill in the Criminal Justice System. Presentation to the Legal Aid Society of New York.

Helfand, S., Bardey, A.S. & Rose, D.S. (2002). Disaster Counseling in an Urban Jail Setting. National Commission on Correctional Health Care - Clinical Updates in Correctional Health Care.

Bardey, A.S., Rose, D.S. & Collins, G. (2001). Mandated Outpatient Treatment in New York City: A Forensic Perspective. American Psychiatric Association Annual Meeting.

Rose, D., Bardey, A.S., Trujillo, M., & Abad, A.A. (2000). Implementing Outpatient Commitment in New York City: A Forensic Perspective. World Psychiatric Association Thematic Conference & Introductory Course on Legal and Forensic Psychiatry.

Bardey, A.S. (2000). The Implementation of Kendra's Law in New York. Harlem Hospital, Grand Rounds.

Bardey, A.S. (2000). The Implementation of Kendra's Law in New York. Gouverneur Hospital, Grand Rounds.

Bardey, A.S. (1997). The Use of Telemedicine in Psychiatry, Middletown Hospital, Grand Rounds.