UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIN SMITH, et al. | * |
| Plaintiffs | * |
| v. | *  Case No. 21-CV-02170 |
| DAVID WALLS-KAUFMAN, et al | * |
| Defendants | * |

**PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S**
**MOTION IN LIMINE TO EXCLUDE OPEN-SOURCE VIDEO**

COME NOW the Plaintiffs, by and through undersigned counsel, and file this Opposition to the Motion in Limine to Exclude the Open-Source Video. As grounds therefore, Plaintiffs state as follows.

**FACTS**

This case arises from the events of January 6, 2021, at the United States Capitol. The events of that day were recorded on police-worn bodycam video (BWC) as well as on videos taken from the participants. After January 6, 2021, some of the participants uploaded their videos to publicly available websites. These open-source videos refer to the videos and photographs that are available from publicly available sources (in contrast to video, for example, that came from a known source like the Metropolitan Police Department). Plaintiffs intend to use open-source video in this civil case.

Plaintiffs retained Grant Fredericks to review video evidence from the events of January 6, 2021. Grant Fredericks is a forensic video analyst and he was retained to review the video evidence from inside the U.S. Capitol building on January 6, 2021. Specifically, Plaintiffs' counsel provided Mr. Fredericks with the BWC video of Officer Jeffrey L. Smith, the Decedent (which had been

1

obtained by way of a Subpoena on the Metropolitan Police Department) together with open-source video. (John SullivanJade Sack FULL UNEDITED VIDEO Capital Riot. Mp4. (Ex. 6, p. 10) Mr. Fredericks used the open-source video and the BWC video to analyze the events of January 6, 2021, and he created a synchronized version of the encounter between Officer Smith and Defendant Kaufman. (Ex. 6-A) These facts are explained more fully in Plaintiffs separately-filed Opposition to the Motion in Limine to Exclude Grant Fredericks.

## ARGUMENT

### A. Background

The Defendant has filed a Motion in Limine and argues that the open-source video should be excluded from evidence for the following reasons:

1. The open-source video is unauthenticated and unverified.
2. The open-source video is not trustworthy.
3. The open-source video is of poor quality.

The Plaintiffs would first note that the Defendant's Motion is premature. The admission of exhibits is generally done in open court through witness testimony. The trial has not yet commenced. The Plaintiffs would also point out that the open-source video evidence is relevant under F.R.E. 401, which merely requires that the proffered evidence "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Federal Rule of Evidence (F.R.E.) 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In his Motion, the Defendant

cites to F.R.E. 403, but does not explain how or why the open-source video is unfairly prejudicial or will mislead the jury. Rather, the Defendant speculates that there is a 'danger' that the video is not of good quality, or that it has been edited. However, he comes forward with zero evidence to support this speculation. As will be explained below, the Plaintiffs are confident that the video can be properly authenticated under F.R.E. 901; that the video is helpful to the jury in showing them what happened on January 6, 2021, involving Defendant Kaufman and Officer Jeffrey L. Smith; and that there is no unfair prejudice to the Defendant by admitting the video into evidence.

### B. The Open-Source Video is relevant under F.R.E. 901

The trial judge is tasked with determining the admissibility of evidence in the first instance. F.R.E. 104(a). The court may conditionally admit evidence subject to further proof. F.R.E. 104(b). In order to admit video evidence, the Plaintiffs bear the burden of authentication under F.R.E. 901, which provides in pertinent part as follows:

> (a) **In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

The standard for admissibility of evidence lies within the discretion of the trial court. As it pertains to photographs and video evidence, the D.C. Circuit has observed that the Federal Rules of Evidence are not an exhaustive list of the methods that can be used to authenticate such evidence – the test is whether the evidence is sufficient to support a finding that the evidence is what the proponent claims. In *United States v. Rembert,* 863 F.2d 1023 (D.C. Cir. 1988), the D.C. Circuit said that the trial court acted within its discretion in admitting ATM photographs by a custodian of records (a person who did not have personal knowledge of the events). The court said as follows:

> Consistent with our decision in *Blackwell* and the teachings of our sister circuits and the courts of the several states, we conclude that the contents of photographic evidence to be admitted into evidence need not be merely illustrative, but can be

> admitted as evidence independent of the testimony of any witness as to the events depicted, upon a foundation sufficient to meet the requirements of Federal Rule of Evidence 901(a). In this case the circumstantial evidence provided by the victim witnesses as to the occurrences at the ATM machines, together with the testimony of Wohlfarth as to the loading of the cameras and the security of the film, coupled with the internal indicia of date, place, and event depicted in the evidence itself provide ample support for the District Court's exercise of its discretion.
> *Rembert,* 863 F.2d at 1028.

Also, the issue of the admissibility of video evidence was addressed in several of the recent criminal cases that arose after January 6, 2021, in this court. In *United States v. Fuller*, 2025 U.S. Dist. LEXIS 28782 (D.D.C. Jan. 16, 2025), the defendants filed a motion in limine to exclude open-source video evidence. Judge Kollar-Kotelly said that the evidence was relevant and not unduly prejudicial but deferred on ruling on the admissibility until the plaintiffs satisfied their "slight burden" of admitting it into evidence. In *United States v. Crawford*, 2024 U.S. Dist. LEXIS 153158 (D.D.C. Aug. 27, 2024), another January 6th defendant moved to exclude open-source video. Chief Judge Boasberg denied that motion, stating that he agreed with the government's argument that the video evidence was properly admissible, and rejected the speculative defense theory that the videos "could have been altered." Furthermore in *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010), an accused drug trafficker argued that audio recordings used by the government were improperly admitted as evidence because they were not able to be properly authenticated. In order to properly authenticate the recordings, the defendant argued that the government had to prove that "as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated." The D.C. Circuit rejected this argument, stating instead that, "[t]he requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

4

The Plaintiffs proffer that they will have at least one witness in court (including a police officer) who was at the scene in the lobby on January 6, 2021, at approximately 2:56 pm, when the assault by Defendant Kaufman against Officer Smith took place. Based on the fact that these witnesses(es) were physically present in the lobby, these witnesses will testify that the images in the video fairly and accurately depict what happened that day. This will provide the proper foundation for the admissibility of the video under F.R.E. 901(b)(1), which allows "testimony that an item is what it is claimed to be." It is axiomatic that the author of a photograph, film or video does not need to be the person who sponsors its admission, but rather, the video can be authenticated by a witness with knowledge that the images fairly and accurately depicts the scene. *See American Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1262 (D.C. 2003).

Mr. Fredericks specifically analyzed Officer Smith's BWC video and the open-source video to create a document entitled Syncrhonized_Event_Tracking.pdf. (Ex. 6, p. 13; Ex. 6-A) Based on the comparison, Mr. Fredericks concluded that the two (2) videos "were recorded at the same time and location." (Ex. 6, p. 3) Also, Mr. Fredericks was able to use the two (2) videos – created at the same time and location - to extract quality images for the slideshow (Syncrhonized_Event_Tracking.pdf). (Ex. 6-A) The two (2) videos were synchronized – meaning each image can be cross-referenced (and cross-checked with) the other contemporaneous images. Also, each slide "contains a linear record of movement and is separated in time by ~33 milliseconds (ms)." In other words, the slides are broken down to extremely slow motion. The synchronized, slow-motion compilation further confirms that the images in the open-source video were recorded at the same time and location as the BWC, or they would not be capable of being synchronized. This proposed testimony and evidence permits admission of the open-source video under F.R.E.901(b)(2), which provides:

"*Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact."

In addition, the open-source video has unique characteristics. In that regard, the open-source video shows: (1) a crowd of people, to include Metropolitan Police Officers; Capitol Police Officers; and protestors. Each of them is wearing clothes, and police insignia, which makes them identifiable. (2) The architecture of the room (marble, high ceilings, columns), the lighting, the metal detectors, and the wall paintings are all indicative that the video was filmed inside the Capitol. (3) The same identifiable people (including Defendant Kaufman in his unique red and white motorcycle jacket) appear in the same locations, wearing the same clothes, and engaging in the same movement in both Officer Smith's BWC video and the open-source video. This makes the open-source video properly admissible under F.R.E. 901(b)(4) which provides: "*(4) Distinctive Characteristics and the Like* . The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."

### C. **Defendant's remaining arguments lack merit**.

The Defendant makes other arguments in an attempt to exclude the open-source video. He argues that there is no evidence of the chain of custody of the video. But, the issue of the "chain of custody" of video evidence is entirely irrelevant. The chain of custody issue relates to whether certain evidence (like drugs or contraband) can be tied to a particular defendant. The authentication of a video, however, relates to whether the images accurately recorded or depicted an event. The Defendant's argument is an apple-to-oranges comparison.

The Defendant argues that there are no guarantees of trustworthiness; i.e. the video could have been edited, compressed or manipulated. However, the standard for authenticity under Rule

6

901 is not high: "the court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the jury ultimately might do so." *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006). Moreover, the Defendant's argument that the video evidence could have been edited, compressed or manipulated "does not and cannot be the basis for excluding ESI as unauthenticated as a matter of course, any more that it can be the rationale for excluding paper documents." *Safavian*, 435 F. Supp. 2d at 38. In addition, the Defendant had equal access to the video and could have conducted whatever tests or analysis he felt was necessary to ensure that the video was authentic but completely failed to do so. Defendant is also free to explore these issues on cross-examination. Finally, given the myriad of video evidence that exists (including police bodycam and other open-source video), the Defendant is free to challenge the images of the Plaintiffs' evidence in his own case.

## **CONCLUSION**

In light of the foregoing, the Plaintiffs request that the Motion in Limine on open-source video be denied.

   /s/ *Dr. David P. Weber*
Dr. David P. Weber, #468260
Richard J. Link, Esq.
GOODWIN WEBER PLLC
11115 Lake View Ln, #1698
Berlin, MD 21811(301) 850-7600
David.weber@goodwinweberlaw.com
richard.link@goodwinweberlaw.com
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served, this 26th day of May, 2025, to: Hughie Hunt, Esq. KEMET HUNT LAW GROUP, INC., 7845 Belle Point Drive, Greenbelt, MD 20705  hhunt@kemethuntlaw.com

   /s/ *Dr. David P. Weber*
Dr. David P. Weber