UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIN SMITH, et al<br><br>Plaintiffs,<br><br>v.<br><br>DAVID KAUFMAN, et al<br><br>Defendants. | Civil Action No. 21-2170 (ACR)<br><br>Judge Ana C. Reyes |

### ORDER REGARDING TRIAL PROCEDURES

The following rules supplement the provisions of the **Standing Order for Civil Cases, Dkt. No. 43,** already entered in this matter.

1. **Schedule and Required Presence of Parties and their Counsel.** The trial will begin **at 9:30 a.m. in Courtroom 12 on June 16, 2025. The presence of both counsel and parties in the courtroom is required.** Unless the parties are otherwise notified, the Court will convene the evidentiary portion of the trial from **9:30 a.m. to 5:00 p.m., Monday through Friday,** with a brief mid-morning and mid-afternoon recess and a break for lunch. Counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in, and preliminary instructions have been delivered by the Court.

    a. Opening statements shall not exceed 45 minutes per side. Any exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the other side prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by **noon on Thursday, June 12, 2025.**

    b. Immediately after opening statements, plaintiffs must be prepared to call their first witness.

    c. If instructed to do so the previous evening by the Court, counsel should be present in the courtroom at least fifteen minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting.

2. **General Courtroom Rules.** In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections; and
    d. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process.** An outline of the jury selection process to be used in this civil matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment.** Counsel needing technical assistance with courtroom equipment (*e.g.*, overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case.** The Court intends to describe the case to the venire panel as follows:

   On January 6, 2021, Metropolitan Police Officer Jeffrey L. Smith (the Decedent) was assigned to the Civil Disturbance Unit and was assigned to remove individuals from inside the U.S. Capitol Building. Defendant David Walls-Kaufman was inside U.S. Capitol Building. Officer Smith and his fellow officers were pushing the crowd to the doors on the Upper House side of the building immediately following the shooting of Ashli Babbitt. At approximately 3:00 pm, a scuffle ensued. Plaintiffs allege that Defendant Walls-Kaufman grabbed Officer Smith's police baton and intentionally struck him in the face, head, and chest region. Plaintiffs contend that Officer Smith suffered from physical and emotional injuries as a result of the incident. Defendant maintains that Officer Smith's injuries (if any) were caused by another incident on January 6, 2021, in which a metal pole struck Officer Smith in the face and head region later that day. The individual who threw the metal pole is not a party to this case. Defendant Kaufman was exiting the Capitol at the direction of the MPD officers when another individual caused a scuffle and the police officers rushed to push all of the remaining individuals out of the Capitol. Defendant Kaufman was pushed out of the Capitol and denies being involved in any intentional assault and battery or any incident with Jeffrey Smith.

6. ***Voir Dire* Questions.** The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order. [Also forthcoming]

7. **Motions or Objections During Trial.**
   a. **No evidentiary objections shall be argued in the presence of the jury.** Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase. To protect the record for appellate review, counsel may explain or amplify any objections on the record outside the hearing of the jury or after the jury has been excused. If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request

       a bench conference.

  b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (e.g., anticipated questions or testimony may refer to a missing witness or potentially inflammatory subject matter). Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
   a. A party calling a witness must arrange for the witness's presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness's testimony. Except in extraordinary circumstances, the Court will not recess the trial due to the unavailability of a witness.

   b. With the exception of the parties, all witnesses must remain outside the courtroom except when testifying. *See* Fed. R. Evid. 615.

   c. After a witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated.

9. **Jury Instructions**. If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the Court will consider the request waived. If a party would like the instruction

included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court. *See* D.D.C. JURY SELECTION PLAN,-r 18.1 (updated May 2022), https://www.dcd.uscourts.gov/sites/dcd/files/D.D.C.JurySelectionPlan-20220517.pdf. Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

DATE: June 16, 2025

                                                  **Ana C. Reyes**
                                                  United States District Judge

## ATTACHMENT A TO TRIAL ORDER

### Jury Selection Process

1. <u>Number of Jurors Seated</u>. Rule 48 of the Federal Rules of Civil Procedure requires that a unanimous civil verdict be returned by a jury of at least 6 members and that the jury begin with no more than 12 members. *See* Fed. R. Civ. P. 48. Accordingly, to provide prudently for the sickness or disability of any juror, a jury of 8 will be selected. Consistent with the Federal Rules of Civil Procedure, no alternates will be selected. *See* Fed. R. Civ. P. 48(a); *see also* Fed. R. Civ. P. 47, Advisory Comm. Note, 1991 Amdt.

2. <u>Venire Panel</u>. The number of panelists is computed by totaling the following: the number of jurors to be selected (8) and the number of preemptory challenges (3 per party, or 6 total). *See* Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870. Thus, in this case, Judge Reyes will *voir dire* a sufficient number of prospective jurors for a venire panel, after excusing panelists for cause, of 14 panelists.

3. <u>Location</u>. The prospective jurors will be seated in Courtroom 12 by the courtroom deputy clerk in the order in which their names appear on the venire list. The seating arrangement will start with the first-listed prospective juror being placed in the first row of seats located on the left side of the Courtroom 12 as viewed from the bench looking toward the rear of the courtroom. Prospective jurors will be seated in the order listed on the venire list in sequential order from the left wall to the center aisle and then from the right wall to the center aisle.

4. <u>Venire List</u>. When the prospective jurors arrive in Courtroom 12 from the Jury Office, counsel will be provided with the written list of the venire panel ("venire list").

5. <u>Juror Seating Order</u>. The prospective jurors will be seated on the left side of the courtroom (as viewed from the bench looking toward the rear of the courtroom) by the courtroom deputy clerk in the sequential order their names appear on the venire list, starting with the first row, from the left wall to the center aisle. The same seating arrangement will be employed on the right side of the courtroom if that space is needed to seat the entire venire panel.

6. <u>Administration of Oath and Preliminary Matters</u>. After the prospective jurors are seated, Judge Reyes will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered to all prospective jurors.

7. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>. Judge Reyes will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental argument at the pretrial conference. The prospective jurors will be collectively asked the *voir dire* questions. The jurors will be instructed to mark on the paper provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions. *See* Fed. R. Civ. P. 47(a).

8. <u>Individual Responses to Questioning</u>. After the collective *voir dire* questions have been

5

asked, prospective jurors will be reseated outside the courtroom. The venire panel will be instructed not to discuss the case or the *voir dire* questions. Each prospective juror will then be escorted individually by the courtroom deputy clerk to Courtroom 12 in the order listed on the venire list. Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper. Counsel will have the opportunity to request that Judge Reyes ask additional pertinent follow-up questions of individual jurors at this time.

9. <u>Strikes for Cause</u>. Strikes for cause should be made immediately after the individual questioning of the prospective juror and will be ruled on promptly. Any juror struck for cause will be excused from the courtroom. When 14 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

10. <u>Peremptory Challenges</u>. Each side will have three peremptory challenges. *See* Fed. R. Civ. P. 47(b); 28 U.S.C. § 1870. The 14 qualified prospective jurors will be placed in the jury box in the order in which their names appear on the venire list. The courtroom deputy clerk will provide the parties with a document upon which they should record their respective peremptory strikes.

    Peremptory challenges are exercised in **three rounds:** in **each round,** plaintiffs exercise one challenge and defendant exercises one challenge, for a total of three challenges for plaintiffs and defendant each. In each round, plaintiffs will exercise their challenge first. A pass by any side counts as a strike. If plaintiffs fail to exercise a challenge on a round, and defendant also fails to exercise a challenge on that same round, the peremptory challenge process for the eight-person jury will be deemed completed. The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list, will be the jury.

11. <u>Swearing-In Jury</u>. Following the exercise of any peremptory challenges, the courtroom deputy clerk will ask the eight qualified prospective jurors remaining to be reseated in the jury box in the order their names appear on the venire list. The jury will then be sworn in.

12. *Batson* <u>Challenges</u>. Prospective jurors who were stricken on a peremptory challenge will not be excused from the courtroom until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986). Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel the improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror. Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions. Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

**ATTACHMENT B TO TRIAL ORDER**
***Voir Dire* Questions**

*General Questions*

1. Will the Plaintiff, Erin Smith, PLEASE STAND. Do you know or have you had any contact with Erin Smith?

2. Erin Smith is represented by Trial Attorneys David Weber, Esq. and Richard Link, Esq.. PLEASE STAND. Do you know or have you had any contact with Mr. Weber or Mr. Link?

3. Will the defendant, David Walls-Kaufman, PLEASE STAND. Do you know or have you had any contact with David Walls-Kaufman?

4. David Walls-Kaufman is represented by Trial Attorney Hughie Hunt, Esq.. PLEASE STAND. Do you know or have you had any contact with Mr. Hunt?

5. You may hear testimony from or about a number of people. The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony. Listen carefully and, if you recognize or know any of the people named, please write down the name or names and let me know at the appropriate time. Plaintiff may go first, and then Defendant may list any additional names.

6. Please look around you. Do you know or recognize any other member of the prospective jury panel, the courtroom staff or me?

7. The lawyers have predicted that the presentation of evidence in this trial should last about five days, but it could be shorter or longer. The jury will sit Monday through Wednesday and Friday of this week, generally from 9:30 a.m. to 5 p.m., although the starting and ending times may vary. This Thursday, June 19th, is a federal holiday, so the trial will not convene. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to this week and next, such that you could be faced with a hardship if selected to serve on the jury in this case?

8. Do you have any vision, language, or hearing problems, or any other physical or medical problems, that would make it unusually difficult for you to serve as a juror in this case, to sit for long periods of time without a break, or that might otherwise interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to this case?

9. Have you, any member of your family or close friend ever studied law or been employed by a lawyer or a law firm, worked in a courthouse, as a paralegal or legal secretary, or performed legal investigative work?

10. Have you, any member of your immediate family, or close personal friend ever been employed by any local, state, or federal law enforcement agency or a private security company? Law enforcement agencies include for example, the Metropolitan Police Department (MPD), the United States Capitol Police (USCP), the U.S. Marshals Service, the Federal Bureau of Investigation (FBI), or the police departments of other states or cities.

11. Have you, any member of your immediate family, or close personal friend ever been employed at the United States Capitol in any capacity?

12. Have you, any member of your immediate family, or close personal friend had any experiences with any law enforcement agency or the government that might cause you to favor or disfavor the government or law enforcement?

13. Have you ever filed a complaint against a police officer or anyone in law enforcement?

14. Prior to this case, have you ever served as a juror at a civil trial, a criminal trial, or on a grand jury?

15. Have you ever testified in court or before a grand jury?

16. I will be instructing the jury in this case that the testimony of law enforcement officers should be treated the same as the testimony of any other witness and that the jury should not give either greater or lesser weight to the testimony of a witness simply because that witness works in law enforcement. Do you have such strong feelings about law enforcement—either positive or negative—that it would be difficult for you to follow this instruction or be a fair juror in the case?

17. In a civil case, a defendant is not liable until the plaintiff proves that the defendant is more likely than not liable to the plaintiff. Will you have any difficulty accepting or applying this rule of law?

18. To reach a verdict on a particular claim, every juror must agree on the verdict. That is, any verdict must be unanimous. In deliberations you must consider the opinions and points of your fellow jurors, but you must also follow your own conscience and be personally satisfied with any verdict. Would you have difficulty expressing your own opinions and thoughts about this case to your fellow jurors?

19. Do you know of any other reason that I haven't asked about that would prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case? For example, do you have any moral, religious, or ethical beliefs that prevent you from sitting in judgment of another person?

*Specific Questions Regarding January 6, 2021*

20. Do you, any member of your immediate family, or close personal friend live or work near, or have any special familiarity with the United States Capitol or the area surrounding the Capitol?

21. Were you, any member of your immediate family, or close personal friend present at or near the Capitol on January 6, 2021?

22. Have you watched any videos or seen any photographs of what happened at the U.S. Capitol on January 6, 2021?

23. Have you been following the investigation into the events of January 6, 2021, at the United States Capitol in the news media or on the internet? This includes following the investigation generally or following specific cases or individuals.

24. I will be instructing the jury that it may consider only evidence that was properly admitted in this case, and the law as I instruct it, and not anything jurors may have seen or heard outside this courtroom about the events at the U.S. Capitol on January 6, 2021. Is there any reason it would be difficult for you to set aside whatever you have seen or heard and whatever feelings or opinions you have about that, to follow my instructions, and to be a fair juror in this case?