UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIN SMITH, et al.                        *

    Plaintiffs                            *

v.                                        *     Case No. 21-CV-02170

DAVID WALLS-KAUFMAN, et al                *

    Defendants                            *

## MEMORANDUM IN SUPPORT OF GRANT FREDERICKS' TESTIMONY AND EXPERT QUALIFICATIONS REGARDING FORENSIC VIDEO EVIDENCE

During the first day of trial on June 16, 2025, Plaintiffs explained to the court that their video expert, Grant Fredericks, would be testifying the following day. The court indicated that it had issues with Mr. Frederick's proposed testimony, and questioned whether the testimony is necessary in the first place due to the video being able to be shown to the jury, and the jury being able to form its own conclusions. On May 30, 2025 the court previously ruled that Mr. Fredericks would be able to testify in conformity with his expert report, subject to minor modification, including refence to the man in the red and white jacket, rather than naming Defendant, as well as avoiding words like striking, and instead using words like making contact with Officer Smith. Plaintiffs will address the court's new concerns below.

## FREDERICKS' TESTIMONY IS NECESSARY

Under Federal Rule of Evidence 702, the role of an expert witness is to use their scientific, technical, or other specialized knowledge to help the trier fact understand evidence or determine a fact in issue. The standard is that the proponent of the expert is able to show more likely than not that the expert's testimony is necessary or would be helpful to the trier of fact,

1

here a jury. The expert must base his or her views on sufficient data or facts, must use reliable principles and methods, and must demonstrate reliable application of the principles and methods to the case at hand. Mr. Fredericks meets all of the requirements under Rule 702. Under the landmark decision of *Daubert v. Merrell Dow Pharmaceuticals, Inc,* the Supreme Court held that while the court has a duty to exclude irrelevant and unreliable expert testimony, if scientific, technical, or other specialized knowledge will assist the trier of fact … an expert may testify, 509 U.S. 579, 589 (1993)

    Mr. Fredericks is a qualified forensic video expert who has testified in hundreds of cases across the United States and has taught forensic video analysis at the FBI Academy. In multiple cases which will be discussed in greater detail below, Mr. Fredericks' qualifications have been found to be sufficient to qualify him as an expert but also have been upheld upon appeals, some of which are published decisions that were provided to the court previously. Mr. Fredericks has the unique skill training and experience to analyze video, including body-worn cameras (BWC's) used by law enforcement. Mr. Fredericks is uniquely qualified to analyze and explain video footage, and aspects in that video footage, such as subtle movements and contacts between individuals and objects in synchronized video and his expertise has been used to assist courts and juries in understanding complex, unclear, and rapid interactions caught on video.

    Plaintiffs were able to locate almost no cases within the DC Circuit on these questions. The sole case that was located was decided by Judge Contrerras in 2018, but the case is distinguishable.  Judge Contrerras found that "when cases involve review of videotaped events, an expert's opinion should not be permitted when the expert is no better suited than the jury to interpret the video's contents." *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 271 (D.D.C. 2018). This is significantly different than the current matter before this court. The videos in the current

matter are extremely complex and without an expert to guide the jury through what it shows, the jury will not be able to understand the evidence. In *Sherrod*, the video expert was using the video which was of one person pointing a firearm at another to say that the video contained one person pointing a firearm at another. In the present matter, Mr. Fredericks will explain intricate details that an untrained observer (i.e. someone who is not a forensic video expert) would miss, including the synchronization of multiple videos together. Further, unlike *Sherrod*, the current case is hardly as simple as one person and one firearm. It involves a riot involving many individuals, officers and movements, the very type of analysis where an expert witness is valuable, and not simply stating the obvious.

      Mr. Fredericks obtained video evidence, and then created a synchronized video document. Mr. Fredericks' skills, knowledge, and experience allow him to comment on and explain the frame by frame comparisons and temporal analysis. Furthermore, he is trained in image stabilization to correct for camera motion and clarify spatial inconsistencies. Mr. Fredericks also trained to synchronize multiple sources of video to create comparison across multiple perspectives as well as the ability to track pixels to follow objects and body parts in motion over time. All of the techniques that Mr. Fredericks applies in the present case to analyze and draw conclusions from the various videos provided to him have been accepted by courts nationwide and are not something that is self-explanatory to a jury.

      Mr. Fredericks will use these skills to assist the trier of fact in explaining to the jury movement trajectories of people and objects such as hands, the baton visible in the BWC, and the movement of Decedent's head. Furthermore, Mr. Fredericks will assist the jury in understanding specific anomalies present and observed in the Decedent's BWC which only a video expert familiar with BWC of this specific brand (Axon) would know and be able to interpret. Mr.

Fredericks will explain in voir dire and his future testimony that he interprets these anomalies to be consistent with an impact to the camera such as in a physical contact with an object, here, Officer Smith's baton striking the camera on his chest. Mr. Fredericks' findings and conclusions are grounded in reliable methodology and based on his knowledge, skill, experience, and training, not speculation.

No one, except someone trained in forensic video analysis, is able to interpret and understand the complex videos set before them if they are not forensic video experts, particularly those synchronized together as we have here. If the Defendant in this matter has any issue with the testimony of Mr. Fredericks then through counsel he may question the expert in voir dire, and thereafter cross-examine him before the jury. Furthermore, Defendant had every opportunity to hire a forensic video expert of his own to do an analysis of the same videos in which Mr. Fredericks based his opinions on, or to contest or rebut Mr. Fredericks testimony. Indeed, Defendant first received the report of Mr. Fredericks back in 2022, approximately three years ago, and since that time has chosen to not hire his own forensic video expert.

Plaintiff would like to note that Mr. Fredericks specifically avoids any conclusions in his report or what he will testify to in regards to state of mind or legal culpability and is not interpreting measurable force. Mr. Fredericks' sole goal is to assist the jury in understanding the multiple complex videos that have been submitted as evidence in this matter.

**<u>FREDERICKS TESTIMONY IS RELIABLE AND CONSISTENT</u>**

Beyond the issue of whether Mr. Frederick's testimony is necessary for the jury, the court also requested cases in which Mr. Fredericks has been allowed to testify to and opine to similar

issues to the present matter. Under the limited amount of time available to Plaintiffs, four cases were identified, and previously provided to the court on June 17, 2025.

In the case of *New Hampshire v. Ellison,* Mr. Fredericks was called to testify as to surveillance videos that he viewed and analyzed. The court in *Ellison* discusses that specific video forensic techniques were admissible as Mr. Fredericks qualified as a forensic video expert and that video forensic science is a widely accepted valid scientific field. The Superior Court rejected any objection about his qualification. The Superior Court then went on to say that Mr. Fredericks documented the steps he took in analyzing the video and was able to recreate, display, and discuss in detail his methodology in both deposition and testimony. The court also recognized that Mr. Fredericks relied on best practice recommendations of nationally recognized scientific communities even when defendant challenged his methodology. Ultimately the court in *Ellison* rejected the defendant's motion to exclude the testimony of Mr. Fredericks.

In the case of *People v. Hung Tran,* defendant argued to the California Court of Appeals that the trial court allowed Mr. Fredericks who was testifying to the video evidence in the case to "become the fact finder." The court in the instant case has raised similar concerns. Mr. Fredericks in *Tran* synchronized multiple videos and used colored arrows to track individuals in the videos. The trial court had Mr. Fredericks, as proposed here, to present the video evidence analysis to walk the jury through the complex interactions that occurred. The California Court of Appeals agreed that the trial court properly allowed Mr. Fredericks to testify even going so far as to say that, "His expertise was necessary for the jury to accurately evaluate the videos *to appreciate who and what they were watching as well as the chronology and relationship between each video*." (Emphasis supplied). The Court of Appeals further stated:

5

>  Although jurors ordinarily may be capable of watching a surveillance video and understanding what they see without expert help, the scene captured by the multiple videos was especially challenging. *As such, Fredericks's assistance in this case was critical because multiple surveillance videos depicted a moving melee, at night, with at least a dozen bodies interacting on a crowded street.* Fredericks's testimony and sequenced videos were necessary to aid the jury's understanding of how the different videos captured the same action from different angles, thus minimizing confusion that can result from contrasting video perspectives, contradictory descriptions, or unreliable eyewitnesses. (Emphasis supplied)

Further, the Court of Appeals noted, as would be applicable in the case at hand, that if a juror did not agree with Mr. Fredericks testimony and placement of certain arrows pointing to certain individuals, that the jury would be within their right as jurors that they did not need to listen to, and could disregard his testimony.   The question of whether the evidence shows what Mr. Fredericks states is solely within the providence of the jury.

In the case of *Commonwealth of Pennsylvania v. Williams*, Mr. Fredericks was used by the Commonwealth to view video footage of the events and to analyze and track the individuals in question. Mr. Fredericks used multiple techniques including "pixel tracking" and using an arrow to track different individuals, just as will be done in this case here. Mr. Fredericks used these techniques to follow the different individuals across different cameras and videos, also as here. Defendant attempted to prevent Mr. Fredericks from testifying and argued that the videos should not be supported by Mr. Fredericks' expert opinions. The court allowed Mr. Fredericks to testify as to the videos. Mr. Fredericks broke down and synchronized numerous video clips and tracked in detail all the individuals involved. The court agreed that Mr. Fredericks' analysis of the videos follow a detailed and precise methodology and that untrained persons would have difficulty tracking pixels with the naked eye. The court concluded that Mr. Fredericks explained technological terminology, demonstrated how it was applied, and described how he was able to use the "pixel tracking" method to track the individual in question including by "locking on" to

specific parts of the bodies. The Court in *Williams* said that the trial court properly permitted Mr. Fredericks to use his specialized knowledge and analysis in a criminal proceeding to aid the jury. The Plaintiffs believe that the court in this case should also allow Mr. Fredericks to aid the jury in describing the events that were captured on the video during the Capitol insurrection.

Finally in *People v. Dumont et al.,* Mr. Fredericks was again brought in to review and analyze video footage Mr. Fredericks testified to what objects the defendant may be carrying, identifying it as the shape of a firearm. The California Court of Appeals affirmed the trial court's decision in allowing Mr. Fredericks to testify to this based on the video footage he analyzed. The state explained in support of Mr. Fredericks' testimony that as a video forensic expert, he has skills that allow him to "notice detail and camera function that is beyond the layperson's experience." Mr. Fredericks explained how he was able to come to the conclusion the defendant was carrying a concealed firearm due to the fact that he was able to track the object and the object's shape, along with the behavior of the defendant to make that determination. Furthermore, the Court of Appeals found defendant's argument unavailing that a jury viewing the same video footage could have reached the same conclusion just as intelligently as Fredericks did.  This same issue is present in the case at bar.

## **CONCLUSION**

Mr. Fredericks' observations in the current matter are narrowly focused on identifying visually confirmed movement and tracking of objects and individuals and the conclusions he made as a result. His findings rely on stabilized, enhanced video imagery and are consistent with standards accepted in prior court and appellate decisions. This type of testimony is limited, technical, and empirical, precisely the kind of support courts have consistently welcomed to assist fact-finders in video-related cases.

Respectfully,

  /s/ David P. Weber

Dr. David P. Weber, #468260
GOODWIN WEBER PLLC
11115 Lake View Ln, #1698
Berlin, MD 21811(301) 850-7600
David.weber@goodwinweberlaw.com
richard.link@goodwinweberlaw.com
Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served, this 17th day of June, 2025, to: Hughie Hunt, Esq. KEMET HUNT LAW GROUP, INC., 7845 Belle Point Drive, Greenbelt, MD 20705  hhunt@kemethuntlaw.com

  /s/ *Dr. David P. Weber*
Dr. David P. Weber