UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIN SMITH, et al. | * |
| Plaintiffs | * |
| v. | *   Case No. 21-CV-02170 |
| DAVID WALLS-KAUFMAN, et al | * |
| Defendants | * |

### PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Come now the Plaintiffs (Erin Smith, individually and on behalf of the Estate of Jeffrey L. Smith), by and through undersigned counsel, and moves this Honorable Court to enforce the settlement agreement reached between the parties in this case. In support of this Motion, Plaintiffs state as follows:[1]

### FACTS

This case arises out of the Plaintiffs' claims for injuries sustained by Metropolitan Police Officer Jeffrey L. Smith. In the operative Second Amended

---

[1] This case was not mediated pursuant to the Court Mediation Program, and the parties were never referred to the Court Mediation Program. The Court Mediation Program is governed by LCvR 84 . By its express terms, these rules only apply to mediations that are done in accordance with the mediation program. LCvR 84(b). This Motion is not being filed under seal because LCvR 84 is not applicable. See, e.g. *Demissie v Starbucks Corp.*, 118 F.Supp.3d 29, 34 (DDC 2015) (motion to enforce settlement agreement in case referred to magistrate judge for mediation was not filed under seal). Also, the parties explicitly agreed at mediation that this settlement was not confidential.

1

Complaint, Plaintiffs allege that Defendant Davids Walls-Kaufman assaulted Jeffrey Smith with a police baton during the January 6, 2021 Capitol riot. The facts germane to this Motion are as follows:

1. On June 2, 2025, the parties appeared for mediation before United States Magistrate Judge Matthew Sharbaugh. The case did not settle. (Weber Affidavit, ¶ 4)

2. From June 16 to June 23, 2025, this case was tried before a jury.

3. On June 23, 2025, the jury entered a verdict in favor of Plaintiffs for $500,000. Mindful of the prospect of post-trial motions and an appeal, the Court urged the parties to return to mediation to attempt a final resolution of this case.

4. On July 8, 2025, both the parties and their counsel appeared before Magistrate Judge Matthew J. Sharbaugh. After four (4) hours of intense negotiation, the parties orally advised the Magistrate Judge that the agreed to the material terms of the settlement agreement. (Weber Affidavit, ¶ 10)

5. On July 8, 2025, at 4:38 pm., Judge Sharbaugh emailed counsel and expressly recited the material terms of the agreement that had been reached. (Weber Affidavit, ¶¶ 11, 12; Ex. 2) The settlement terms included the payment amount ($465,000); the payment schedule (three years); and contained a mutual release of claims. Critically, the settlement also included a waiver of all mutual appeal rights and post-verdict motions (Weber Affidavit, ¶11; Ex. 2, p. 1, 3) Judge

2

Sharbaugh directed the parties as follows: "To signify your agreement, please separately reply all to this email, "Agreed." (Weber Affidavit, ¶ 11; Ex. 2, p. 1)

6. On July 8, 2025 at 4:42 pm, Dr. David P. Weber, attorney for Plaintiffs responded on behalf of Plaintiffs, "Plaintiffs Agree. Thank you judge and Mr. Hunt for getting to this point." (Weber Affidavit, ¶ 12; Ex. 2, p. 2)

7. On July 8, 2025 at 4:44 pm, Attorney Hughie Hunt responded on behalf of Defendant Kaufman: "Defendant Agrees. Thank you, I am glad we could work this out and all parties can move on." (Weber Affidavit, ¶ 13; Ex. 2, p. 1)

8. On July 17, 2025, Dr. Weber sent a draft of the proposed written settlement agreement to attorney Hunt. (Weber Affidavit, ¶ 15; Ex. 3)

9. On July 21, 2025, attorney Hunt advised Dr. Weber that his client had discharged him and that a new attorney would be representing Defendant Kaufman. (Weber Affidavit, ¶ 16)

10. On July 23, 2025, Dr. David P. Weber emailed attorneys Hunt and Carter, notifying them that Defendant Kaufman was in breach of the settlement agreement by failing to tender the initial payment of $165,000, that pursuant to the settlement agreement that the entire debt amount was now accelerated, and demanded payment to cure. (Weber Affidavit, ¶ 17)

## ARGUMENT

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them." *Demissie v. Starbucks Corp. Office & Headquarters*, 118 F.Supp.3d 29, 34 (DDC 2015). A party seeking to enforce a settlement agreement bears the burden of proving the existence of a binding agreement by clear and convincing evidence. *Blackstone v. Brink*, 63 F.Supp.3d 68, 76 (DDC 2005). District of Columbia law is that " a complete enforceable contract exists when there is: (1) an agreement as to all the material terms; and (2) an intention of the parties to be bound." *Hood v. Dist of Columbia*, 211 F.Supp.2d 176, 179 (DDC 2002).

The movant in an enforcement action also must demonstrate that the attorney had authority to bind his client. *Rios v. I.S. Enterprises,* 113 F.Supp. 3d 283 (DDC 2015); *Hodges v. Potter*, 2005 WL 6336682 at *1 (DDC 2005). The issue of whether an attorney has the requisite authority to bind his client to a settlement agreement is governed by agency principles. "While a client's right to accept or reject a settlement offer is absolute, under District of Columbia law, *In re Hager*, 813 A.2d 904, 919 (DC 2002) it is also well established that an attorney may execute a legally binding settlement agreement if the attorney possess the requisite agency authority under governing agency principles." *Hall v. George Washington University*, 2005 WL 1378761 (DC 2005). Indeed, an attorney can bind his client to a settlement if he has

4

actual authority to act on his client's behalf. *United States v. Beebe*, 180 US 343, 352, 21 S.Ct. 371 (1901); *Bronson v. Borst*, 404 A.2d 960, 962 (DC 1979).

To ensure that the court has an adequate record of the proceedings, courts will frequently hold an evidentiary hearing to determine whether the parties have in fact reached a binding settlement agreement. *Rios v. I.S. Enterprises*, 113 F.Supp. 283 (DDC 2015); *Whitaker v. United States*, 2021 WL 2300265 (DC 2021). Among other things, the district court can determine whether the agreement contains all material terms; can determine whether the parties actually agreed to its terms; and can make credibility determinations germane to issue of whether the attorney had the authority to enter a binding settlement agreements on behalf of his client. *Hall v. George Washington University*, 2005 WL 1378761 (DDC 2005)

A. **Agreement as to all material terms**

The first question for the court is whether "a complete agreement has been reached as to all terms and conditions." *Hood* , 211 F.Supp2d at 180. A material term includes the amount to be paid, payment terms, and a release of liability. *Blackstone v Brink*, 64 F.Supp3d 68, 77 (DDC 2014). A term is not deemed material if it is "not necessary for the parties to understand how they are expected to perform the contract itself." *Duffy v. Duffy*, 881 A.2d 630, 636 (DC 2005). Terms may be

5

deemed immaterial when the parties do not discuss them during negotiations, but rather only bring them up after the fact. *Dyer v. Bilall*, 983 A.2d 349, 358 (DC 2009)

Applying the foregoing principles to the instant case, Magistrate Judge Sharbaugh's email contains the requisite material terms – including the payment terms, waiver of post-trial motions and appeals and a release – such that this court can enforce the settlement agreement, to wit:

1. It recites the amount to be paid; i.e. $465,000.00.
2. It recites the payment terms; i.e. $165k by July 22, 2025; $150K by July 1, 2026; and $150K by July 1, 2027. Also, it says that no collection activity would take place, except in the event of breach in which case the balance due would be accelerated and collection could commence immediately.
3. It specifically states that interest will not run, except in the event of breach (calculated at the federal rate).
4. It contains a mutual release: "both sides will agree to a general release and mutual waiver of claims, known or unknown, against the other from the date of agreement back to beginning of time."
5. It terminates the controversy: "Both sides will mutually agree to forego any and all posttrial motions and any and all appeal rights."

The procedural posture of this case augments the Plaintiffs' legal argument that the parties had agreed on all material terms. Specifically, prior to the mediation, a jury had rendered its verdict, setting a damages amount. Although this court had extended the deadline for post-judgment motions, the mediation occurred in the context of addressing the question of how much the Defendant would pay Plaintiffs, over what period of time, and how the litigation could be finally and conclusively terminated.

Also, Magistrate Judge Shambaugh's July 8th email used the term "material" three times. Under an objective method of contract interpretation, the court should credit the use of that term of art. In other words, a fair and reasonable reading of the July 8th email – in conjunction with the payment and release language – demonstrates that the parties had in fact agreed on the material terms of settlement.

Finally, the parties had reached agreement on several other terms – over and above the minimum necessary to resolve the dispute:

1. The parties had agreed that the settlement agreement would <u>not</u> be confidential; there would be <u>no</u> non-disparagement language.
2. The parties agreed that they would consent to proceeding before Magistrate Judge Sharbaugh going forward in all disputes or otherwise in the case.
3. The parties agreed that they would file a Consent Order.

4. The parties agreed that Plaintiff would characterize the settlement as non-economic damages for tax purposes, with Defendant taking no position and having no tax liability regarding same if the Commissioner of Internal Revenue was to disagree.

The parties' agreement on these other terms show that the parties had given consideration to a fairly exhaustive list of terms, and that <u>they actually agreed</u> on all of these items during the course of their mediation.

**B.     Intention to be bound**

The next issue for the court's consideration is whether there is sufficient evidence of an intention to be bound. Mutual assent is most clearly evinced by the written terms of a signed written agreement, but such a signed writing is not essential to the formation of a contract. "[T]he ultimate issue is whether [the parties] manifested a mutual intent to be bound contractually." *Dyer v. Bilaal*, 983, A.2d 349, 357 (DC 2009). "There must be an honest and fair meeting of the minds as to all issues in a contract . . . . The parties to a settlement agreement must intend the words and act constitute their manifestation of assent." *Simon v. Circle Associates, Inc.*, 753 A.2d 1006, 1012 (DC 2000).

There is clear evidence that the parties intended to be bound by the settlement agreement.

1. The procedural context of this case is important. Erin Smith and her counsel, Dr. David P. Weber, attended the mediation on behalf of the Plaintiffs. David Walls-Kaufman and his counsel, Mr. Hughie Hunt, attended the mediation on behalf of the Defendant.

2. Attorney Hunt had solely and independently represented the Defendant for several years during the pendency of this case, including at the prior mediation on June 2, 2025; and at the jury trial in June 2025.

3. The parties attended the mediation with the express purpose of attempting to resolve the pending case before the parties delved into motions and an appeal. (Ex. 1, p. 2). The parties had already spent the last several months in motions practice (motions in limine; summary judgment motions; motions for sanctions) and had endured a jury trial that lasted more than a week. It was clear that the purpose of the mediation was an attempt to resolve a very hard case. Indeed, attorney Hunt's email reply to the Magistrate Judge reflects this same sentiment: "Defendant agrees. Thank you, **I am glad we could work this out and all parties can move on**." (Ex 2, p. 1)

4. The July 8, 2025 mediation occurred via ZOOM. Plaintiff and Defendant were in separate meeting rooms while Magistrate Sharbaugh toggled

9

back and forth. Nonetheless, it is beyond cavil that Defendant was with his chosen counsel throughout the July 8th mediation process. (Weber Affidavit, ¶ 8).

5. Magistrate Judge Sharbaugh's email is the product of the parties joint negotiation. The terms in that agreement did not just magically appear; i.e. the parties and their lawyers were clearly afforded the opportunity to haggle over each and every term of the agreement.

6. After each party <u>orally agreed</u> to the settlement, Magistrate Judge Sharbaugh then emailed the parties and specifically requested that each party note their written assent to the settlement, presumably to both document the agreement and to meet the requirements of the Statute of Frauds as a writing:

"To signify your agreement, please separately reply all to this email. "Agreed." (Ex. 2).

7. Counsels for Plaintiffs and Defendant each said they "agree" in writing - there were no if's and's or buts. (Ex. 2, pp. 1-2). This email exchange occurred after four (4) years of litigation; post-verdict; immediately after an hours-long process; and in the context of a court-sponsored mediation. When Magistrate Judge Sharbaugh asked the parties to note their written assent to the agreement, there can be but one inference; i.e. that parties and their counsel fully and knowingly appreciated the significance of: (a) what the judge was asking of the

10

parties; (b) the reason the judge was asking this question; and (c) the import of an affirmative response.

8. The parties were actually present on ZOOM during the July 8, 2025 mediation. (Weber Affidavit, ¶ 9). Thus, Dr. Kaufman cannot credibly allege that he was unaware of what was happening or that he had not given his assent to resolve the litigation on the stated terms. Dr. Kaufman's presence during the Zoom mediation, his oral discussions with the Magistrate Judge during the process, together with the timing of the judge's email and attorney Hunt's <u>immediate</u> reply evinces that Mr. Hunt had actual authority to settle this case when he quickly replied to the Court's email.

The Plaintiffs respectfully aver that there is mutual assent to the settlement agreement as evidenced by the email chain and the agreement should be enforced.

## C.     Precedent Supports Enforcement of the Agreement

In the case of *Demissie v. Starbucks*, 118 F.Supp. 3d 29 (2015 DDC), the court was asked to enforce a settlement agreement. That case bears a significant resemblance to this case. The parties were engaged in contested employment litigation and were directed to attend a settlement conference before a magistrate judge. After a negotiation, the parties met in chambers and orally acknowledged that they had agreed on a settlement. The material terms included (1) a lump sum payment; (2) a release; (3) resignation. At some later date, the plaintiff attempted to back out of the settlement, purportedly because the defendant did not agree to language as to the tax treatment of the lump sum payment. The district judge found that the parties had reached a binding settlement agreement and granted the defendant's motion to enforce. The court found that the issue of tax treatment was not initially discussed at mediation and was not a material term; i.e. the absence of this term did not prevent enforcement. The court found that the parties conduct evinced an intention to be bound and held that they had reached a binding settlement agreement.

While in *Demisse*, the court enforced the parties' <u>oral</u> settlement agreement. However, the facts in the instant case are more compelling. At the July 8, 2025 mediation, Magistrate Judge Sharbaugh reduced the parties' agreement to writing, and both parties responded (in writing) that his email accurately stated their

12

agreement. (Ex. 2). In other words, the Plaintiffs in the instant case are asking that this Court enforce a <u>written agreement,</u> rather than a mere oral agreement. The fact that this written settlement agreement was signed by counsel for the parties during court-sponsored mediation demonstrates that there is no reasonable doubt that the settlement agreement is binding and enforceable.

**D.     Entry of an Order and Judgment**

If the Court agrees with Plaintiffs that the parties entered a binding settlement agreement, then the agreement dictates the next step. The parties' agreement clearly required that the Defendant issue make his first payment of $165,000 to the Plaintiffs no later than July 22, 2025. (Ex. 2) The Defendant failed to do so. By email dated July 23, 2025, counsel for Plaintiffs notified Defendant's counsel that he was in default and that Plaintiffs would seek a judgment for the full amount. (Ex. 4) Defendant has not responded to the Plaintiff's demand in any manner, even though they were told in advance that the demand would be made. Indeed, Defendant's new counsel conceded that she understood there was a possibility the agreement would be ordered enforced. The parties' agreement contemplated that the Plaintiff would pay the settlement amount in three (3) payments over the course of three (3) years. (Ex. 2). The parties also agreed that the judgment would not accrue interest if the agreement was fully complied with, and that Plaintiffs would forego collection

activity so long as the Defendant was not in default.  Rather than avail himself of these generous payment terms, the Defendant has chosen to go in another direction.

## CONCLUSION

In light of the foregoing, the Plaintiffs request that this Court immediately enter judgment against the Defendant and that this court enter the attached Order.

    /s/ *Dr. David P. Weber*
Dr. David P. Weber, #468260
Richard J. Link, #443609
GOODWIN WEBER PLLC
11115 Lake View Ln, #1698
Berlin, MD 21811(301) 850-7600
David.weber@goodwinweberlaw.com
richard.link@goodwinweberlaw.com
Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was emailed through ECF and separately emailed to both counsel, this 26th day of July 2025, to

Hughie Hunt, Esq.
Kemet Hunt Law Group, Inc.
7845 Belle Point Drive
Greenbelt, MD 20705
hhunt@kemethuntlaw.com


Heba K. Carter, Esq.
General Counsel, P.C.
1320 Old Chain Bridge Road, Suite 440
McLean, VA 22101
hcarter@gcpc.com

                                        <u>   /s/ *David P. Weber*</u>
                                        David P. Weber