UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ERIN SMITH, et al.** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| | * | |
| v. | * | Case No. 21-CV-02170 |
| | * | |
| **DAVID WALLS-KAUFMAN, et al.** | * | |
| | * | |
| Defendants. | * | |
| | * | |

**DEFENDANT DAVID WALLS-KAUFMAN'S OPPOSITION TO PLAINTIFFS' MOTION TO SHORTEN TIME**

COMES NOW Defendant Dr. David Walls-Kaufman ("Dr. Kaufman"), and hereby files his Opposition to the Plaintiffs' Motion to Enforce the Settlement Agreement ("Motion to Enforce"), and in support thereof states as follows:

**RELEVANT PROCEDURAL HISTORY**

1. On July 8, 2025, after trial, the Parties attended a virtual mediation conference before Magistrate Judge Matthew J. Sharbaugh.

2. At the conclusion of the conference an oral understanding was reached outlining certain terms of a potential settlement agreement.

3. An email was thereafter circulated among counsel and Hon. Judge Sharbaugh. This email articulated an agreement *in principle*. The email specifically indicates that the Parties had simply reached "a settlement in principle" but that neither Party had prepared, reviewed or signed a written settlement agreement outlining all of the terms by which they would have agreed to be bound. A copy of the correspondence is attached as Exhibit A.

4. On July 8, 2025, Attorney for the Plaintiffs Mr. Weber responded indicating that the "Plaintiffs agree. Thank you Judge and Mr. Hunt for getting to this point." See Exhibit A.

5. On July 8, 2025, Attorney for Dr. Walls-Kaufman Hughie Hunt ("Mr. Hunt") replied "Defendant agrees. Thank you, I am glad we could this out and all parties can move on." See Exhibit A.

6. At no time did Dr. Walls-Kaufman provide any indication in writing that he had accepted the proposed settlement terms. Dr. Walls-Kaufman never sent an email or written acceptance of the terms of the proposed settlement agreement.

7. Then on July 17, 2025, Counsel for the Plaintiffs prepared a "***proposed settlement agreement.***" Plaintiffs' counsel specifically wrote "Please see the attached proposed settlement agreement and consent order. If you can please redline to let us know what needs to be changed (if anything)." See Exhibit B.

8. The Settlement Agreement included the following language: "Tax Treatment. The payments made by Kaufman to Smith under this Consent Judgment and Settlement Agreement shall be deemed non-economic damages for pain and suffering. Smith maintains that these payments are non-economic damages and thus, are non-taxable income under the Internal Revenue Code." See Exhibit B.

9. After July 17, 2025, Dr. Kaufman declined to sign the document proposed by Plaintiffs' counsel and On or about July 26, 2025, Plaintiffs filed their Motion to Enforce.

10. As further outlined below, the Plaintiffs are unable to show that the proposed settlement agreement satisfies the statute of frauds. For these reasons, the Motion to Enforce must be denied.

## ARGUMENT

"It is well established that federal district courts have the authority to enforce settlement agreements entered into by the litigants in cases pending before them." *Ulliman Schutte Constr.,*

*LLC v. Emerson Process Mgmt. Power & Water Solutions,* No. 02–1987, 2007 WL 1794105, at *3 (D.D.C. June 19, 2007). Under D.C. law, oral contracts are generally enforceable unless some specific enactment, such as a statute of frauds, renders a specific category of oral contracts unenforceable. *See, e.g., Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236, 1238 (D.C.1995) ("Absent any contrary requirement under a statute of frauds, parties may enter into enforceable oral contracts[.]" (citation omitted)). D.C.'s statute of frauds does not require a written settlement agreement between an insurer and a third party. *See* D.C. Code § 28–3501 *et seq.*; *see also Samra,* 355 F.Supp.2d at 497 n. 10 (noting that oral settlement agreements do not fall within the statute of frauds in D.C. unless the agreement includes something that would bring it within the statute, such as a transfer of real property (citations omitted)). Instead, for a contract—written or oral—to be enforceable under D.C. law, the court must find that there was "(1) an agreement to all material terms, and (2) intention of the parties to be bound." *Duffy v. Duffy,* 881 A.2d 630, 634 (D.C.2005) (citations omitted); *Steven R. Perles, P.C. v. Kagy,* 473 F.3d 1244, 1249 (D.C.Cir.2007) (collecting cases).

When there is a genuine factual dispute as to whether the parties agreed to a binding settlement, the Court must hold an evidentiary hearing[1] in which the parties are afforded the opportunity for cross-examination. *See United States v. Mahoney,* 247 F.3d 279, 285 (D.C.Cir.2001). The moving party bears the burden of proving by clear and convincing evidence that the parties reached a binding agreement. *See Samra v. Shaheen Bus. and Inv. Grp., Inc.,* 355 F.Supp.2d 483, 493 (D.D.C.2005) (citing *Quijano v. Eagle Maint. Servs., Inc.,* 952 F.Supp. 1, 3

---

[1] The law is clear that when there is a genuine dispute of fact, the Court must hold an evidentiary hearing to determine whether the parties agreed to be bound. Dr. Kaufman hereby requests his right to cross examine the Plaintiffs and the witnesses who are determined to bind him to an alleged agreement that he did not execute.

(D.D.C.1997)). For a contract, written or oral, to be enforceable under D.C. law, the court must find that there was "(1) an agreement to all material terms, and (2) intention of the parties to be bound." *Duffy v. Duffy,* 881 A.2d 630, 634 (D.C.2005). If one of these two elements are missing, the Court cannot enforce the agreement.

Here the Plaintiffs' cannot meet their burden of proving both elements by clear and convincing evidence. For these reasons, the Motion to Enforce must be denied.

A. *The Parties did not agree to all material terms.*

In the District of Columbia, settlement agreements are treated as contracts. *Makins v. District of Columbia,* 277 F.3d 544, 548 (D .C. Cir.2002), and "general principles of contract law govern [their] resolution." *Foretich v. American Broadcasting Companies, Inc.* 198 F.3d 270, 274 (D.C.Cir.1999).

Which of the parties' agreement terms are material is a question of fact. *See, e.g., Queen v. Schultz,* 747 F.3d 879, 885 (D.C.Cir.2014). A contract's material terms must be " 'sufficiently definite' so that each party can be 'reasonably certain' about what it is promising to do or how it is to perform." *Dyer v. Bilaal,* 983 A.2d 349, 356 (D.C.2009). Terms that are "not necessary for the parties to understand how they are expected to perform the contract itself" are not considered material. *Tauber v. Quan,* 938 A.2d 724, 730 (D.C.2007). For example, terms that were not discussed by the parties during negotiations, but are only brought up after-the-fact, may be deemed immaterial. *See Dyer v. Bilaal,* 983 A.2d 349, 358 (D.C.2009) (finding that confidentiality was not a material term in part because the parties had not discussed confidentiality while negotiating the settlement). Whereas, courts have found that the amount to be paid and the release of liability are material terms to a settlement agreement. *See, e.g., Wise v.*

*Riley* 106 F.Supp.2d 35, 39 (D.D.C.2000). Thus, courts make a determination of which terms are material on a case-by-case basis.

It is a long-standing principle of District of Columbia law that when parties have entered into an illegal contract, such contract is unenforceable and, typically, we leave the parties where we find them. *See, e.g., Capital Constr. Co. v. Plaza West Coop. Ass'n, Inc.,* 604 A.2d 428 (D.C.1992) (home improvement contractor who accepted progress payments when it was not a licensed contractor violated D.C. regulations and could not enforce the contract); *Fields v. Hunter,* 368 A.2d 1156 (D.C.1977) (liquor store owner not entitled to money owed for goods sold and delivered where agreement was sale of liquor on credit in violation of D.C. statute); *Credit Finance Serv., Inc. v. Able,* 127 A.2d 396, 398 (D.C.1956) ("unlawful interest charge results in voiding the contract and disentitles the lender to any recovery"); *Hartman v. Lubar,* 77 U.S.App. D.C. 95, 96, 133 F.2d 44, 45 (1942) ("an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer"), *cert. denied,* 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943). *See also* Richard A. Lord, Williston on Contracts § 12:4, at 23–24 (4th ed.1995) (it is an "elementary principle ... that one who has participated in a violation of the law will not be allowed to assert in court any right based upon ... the illegal transaction"); Restatement of the Law of Contracts § 598 (1932) (general rule in contract law for the effect of illegality on a contractual arrangement is that the arrangement is unenforceable by either party).

One of the material terms of the proposed agreement included treating the $465,000 settlement payment as non-economic damages and "non taxable" to the Plaintiff. See Exhibit B. The Settlement Agreement included the following language: "Tax Treatment. The

payments made by Kaufman to Smith under this Consent Judgment and Settlement Agreement shall be deemed non-economic damages for pain and suffering. Smith maintains that these payments are non-economic damages and thus, are non-taxable income under the Internal Revenue Code." See Exhibit A. Dr. Kaufman was expected to sign an agreement that could implicate him as a conspirator to tax fraud.

Under the Internal Revenue Code, the only types of damages arising from a settlement agreement or lawsuit that are non-taxable are those received on account of personal physical injuries, physical injuries, and certain discrimination claims. IRC § 61 and 104. The jury in this case entered a verdict awarded $60,000 in damages to the Estate of Jeffrey Smith for "his injuries" and $60,000 in damages to Erin Smith for "her injuries", totaling $120,000 in damages for physical injuries that would be non-taxable under the Internal Revenue Code. The remaining damages awarded by the jury were $380,000 in punitive damages—not exempt under the Code. The proposed settlement agreement requires Dr. Kaufman to affix his signature on a document that could implicate him in tax fraud or a tax investigation. While it indicates that he takes "no position on how these payments are classified for tax purposes", he cannot sign a document that could potentially allow him to be investigated by the Internal Revenue Service. By "taking no position" on the matter, Dr. Kaufman could be determined as implicated in the tax fraud. He is aware of how the Plaintiffs have chosen to classify the payments, and is aware of the law surrounding such settlement payments. Requiring his signature as taking no position on such a transaction, could later be deemed to be illegal conduct and implicate Dr. Kaufman in a crime.

A contract with an illegal term is absolutely material, and is something he cannot legally bind himself to. Improperly classifying the full $465,000 payment as non-economic damages, when the jury only awarded $120,000 as non-economic damages, may be considered a

misclassification under the IRC, and may lead to tax penalties or an investigation. Including such a term in the settlement agreement makes it inherently unenforceable. Should the Plaintiffs have chosen such a classification on their own, without including the language in the agreement, perhaps the circumstances would be different. Including the language in writing, a document to which Dr. Kaufman is expected to be bound, creates a potentially illegal transaction and "an arrangement that is unenforceable by either party."

Restatement of the Law of Contracts § 598 (1932) (It is a general rule in contract law that the effect of any illegality on a contractual arrangement is that the arrangement is unenforceable by either party. Because the proposed settlement agreement includes an unenforceable illegal term, the Parties must be left "where we found them", before any agreements were made or allegedly made.

  B. <u>Dr. Kaufman did not intend to be bound.</u>

If the court finds that the parties agreed as to all material terms orally, the court must also determine whether the parties intended to be bound by their words alone. *See Perles v. Kagy*, 473 F.3d 1244, 1249 (D.C.Cir.2007). The parties did not intend to be bound if "either party knows or has reason to know that the other party regards the agreement as incomplete." *Perles,* 473 F.3d at 1249. "[T]he fact that the exact language of [a] written settlement agreement had not been finalized does not demonstrate that the parties did not intend to be bound by their agreement." *Varga v. Baker*, No. 92–5064, 1993 WL 20073, at *1 (D.C.Cir. Jan. 5, 1993). To determine whether the parties intended to be bound, the court may examine written materials, oral expressions, and the actions of the parties, including conduct that occurred after the alleged oral agreement. *See Miller v. Holzmann*, 471 F.Supp.2d 122, 124–25 (D.D.C.2007). There is no intent to be bound "if either party knows or has reason to know that the other party regards the

agreement as incomplete" or that one party only intends to be bound to a ***later written agreement***. *Perles,* 473 F.3d at 1249 (internal quotation marks and citation omitted)(emphasis added).

In *Blackstone v. Brink*, 63 F. Supp. 3d 68 (D.D.C. 2014), this Court was asked to enforce a settlement agreement after an evidentiary hearing on the matter. The case arose out of a traffic accident that resulted in the death of pedestrian Theresa Whitley ("Whitley"). *Id.* at 71. Her family hired counsel Ronald Mitchell ("Mitchell") to engage in settlement negotiations with State Farm Insurance company, who insured the driver of the vehicle James Brink ("Brink"). *Id.* During the settlement discussions, Oltchick made contemporaneous notes suggesting that the tender of the settlement check was a conditional offer of settlement. *Id.* at 72. Oltchick testified at the hearing that he has never mailed a settlement check for an amount as substantial as $100,000.00 policy limit without first securing the party's agreement to settle. *Id.* at 73. The State Farm Insurnace Claims Representative Paul Oltchick ("Oltchick") the estate through Mitchell, sent a $100,000 check to Mitchell, the maximum under Brink's policy. *Id.* The dispute arose as to whether Mitchell in fact accepted the offer on behalf of his clients. *Id.* The testimony at the hearing revealed that Oltchick mailed the settlement check to Mitchell on September 19, 2013, because the parties had reached an agreement. *Id.* This Court found that the parties intended to be bound because they arranged for payment, and the payment was actually tendered. *Id.* at 82. The Court explained, "the actions of the parties [including the mailing of the settlement check and] related to arranging for payment are thus clearly consistent with their having reached a final agreement to which the parties intended to be bound." *Id.*

In *Donald Marshall Berlin v. Bank of America, N.A.*, 101 F. Supp. 3d 1 (D.D.C. 2015) this Court examined a complaint filed by borrowers against their lender Bank of America N.A. The

complaint alleged breach of contract, break of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, violations of the FCRA and promissory estoppel. *Id.* at 6. Bank of America filed a motion to dismiss arguing that the complaint failed to state a claim for relief. *Id.* at 11. Bank of America argued that the contracts alleged in the complaint were unenforceable under the statute of frauds. *Id.* at 13. The "contract" or "agreement" in this case constituted "hundreds emails, telephone calls, telefaxes and letters" reflecting communications and negotiations between the borrowers and Bank of America[2]. *Id.* at 14. The Court explained, but did not affirmatively hold, that "emails *may* be sufficient" only if they established that Bank of America's offer to remedy certain issues with the loan documents was in exchange for the "[borrowers'} paying off certain loans]". *Id.* (Emphasis Added). In this case, there were hundreds of emails back and forth between the parties, and it was the borrowers themselves who were communicating with Bank of America. *Id.* It was the borrowers directly who engaged in the communications with Bank of America, including the "hundreds of emails, telephone calls, telefaxes and letters." *Id.* The parties were not each represented by counsel when these discussions took place. *Id.*

Importantly, in the District of Columbia, the decision to settle belongs to the client, and the client alone. D.C. Rule of Prof. Conduct 1.2 (a) (2004). In *Bronson v. Borst*, 404 A.2d 960 (D.C. Ct. App. 1979), an attorney brought a declaratory judgment action to enforce a purported settlement agreement against the client. The D.C. Court of Appeals refused to bind the client to the agreement because the decision to accept and sign an agreement was the "client's and not the attorney's". See also *Auvil v. Grafton Homes, Inc.,* 92 F.3d 226, 227–28 (4th Cir.1996) ("While

---

[2] Importantly, the Court did not decide the issue of the statute of frauds, because it is an affirmative defense—the borrowers were not required to plead facts in their complaint to defeat such a defense.

the record facts supported the conclusion that the client manifested his attorney's authority to *negotiate* a settlement, the Court did not agree that they support the conclusion that the client manifested his attorney's authority to *execute* a settlement agreement.") (emphasis in original).

In the case before the Court today, the Plaintiffs have not met their burden of proving that Dr. Kaufman intended to be bound by the alleged oral agreement. First, unlike *Blackstone*, there was no action taken by Dr. Kaufman to show that he agreed to the settlement. He did not make the first payment nor did he make any arrangements to make any payment to the Plaintiffs. Second, Dr. Kaufman did not provide his consent to the material terms. Plaintiffs argue that because Mr. Hunt emailed his consent that that is sufficient to satisfy the statute of frauds. The law does not support such a contention. In order for an email to suffice, it must have come from Dr. Kaufman himself.

This Court alluded to the argument that an email correspondence satisfies the statute of frauds pursuant to *Donald Marshall Berlin v. Bank of America, N.A*. Respectfully, that was not a holding in that case. Instead, the Court simply indicated that "emails ***may*** be sufficient". And importantly, the emails in that case were from the individual borrowers themselves, not from their counsel—and there were hundred of emails and other correspondence directly between the parties negotiating the alleged agreement. While the Court did not specifically rule on the statute of frauds issue, it alluded to the fact that the borrowers themselves emailed back and forth with Bank of America and the parties, therefore, "may" have been bound by those email communications. The case at Bar is completely distinguishable. Here, there was only one email from Mr. Hunt "accepting" the terms outlined by Hon. Judge Sharbaugh. Had the email been from Dr. Kaufman himself, then perhaps he would have shown an intent to be bound. That, however, is not what happened. Dr. Kaufman was not a party to the correspondence. He did not

assent or agree to the terms in the email—there was no clear and convincing evidence that the intended to be bound by these terms.

Further, Mr. Hunt could not have bound Dr. Kaufman in such a manner. There is a difference between the authority of a lawyer to negotiate and accept the terms of a settlement agreement, and the ability to actually execute an agreement on behalf of a client. They are not one and the same. *Auvil v. Grafton Homes, Inc.,* 92 F.3d 226, 227–28 (4th Cir.1996). There is no evidence before this Court that Mr. Hunt had the authority to bind his client in an email, to all of the terms outlined by Hon. Judge Sharbaugh, and the later sent agreement. He did not have the authority to execute the settlement agreement (which was still only in draft form), or to bind Dr. Kaufman by executing the agreement.

The ramifications of setting this type of precedent are concerning. If an attorney could actually execute a Settlement Agreement for their client, the decision of whether or not to settle is taken away from the most important people in the case—the parties themselves. To take away such a right infringes on the protections of the legal system.

Finally, the case law and the facts as they stand (without having had the opportunity for an evidentiary hearing or for cross examination), do not support Plaintiffs' argument that Dr. Kaufman intended to be bound by this oral agreement by clear and convincing evidence. Dr. Kaufman did not act on the settlement terms, he did not acknowledge in writing any assent to the terms, and his counsel, Mr. Hunt, could not have executed the terms on behalf of Dr. Kaufman--the decision to accept and sign an agreement was the "client's and not the attorney's". *See also Auvil v. Grafton Homes, Inc.,* 92 F.3d 226, 227–28 (4th Cir.1996).

## CONCLUSION

For the foregoing reasons, Dr. Kaufman respectfully requests that this Court deny the Motion to Enforce, and order any and all other relief as this Court deems proper.

Dated: August 8, 2025            Respectfully Submitted,

/s/Heba K. Carter
Heba K. Carter, Esq.
General Counsel, P.C.
1320 Old Chain Bridge Road, Suite 440
McLean, VA 22101
Tel: (703) 556-0411
hcarter@gcpc.com
*Counsel for Defendant*

## COUNSEL CERTIFICATION

Per this Court's instructions, I hereby certify that I have consulted with counsel Hughie Hunt in preparing this Opposition.

/s/Heba K. Carter
Heba K. Carter, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August 2025, a true copy of the foregoing was sent via CM/ECF and mailed by U.S. Mail, postage prepaid and email to:

Richard J. Link, Esq.
GOODWIN WEBER PLLC
11115 Lake View Ln
Ste #1698
Berlin, MD 21811
(301) 850-7600
Fax: 240-453-9944
Email: rlink@karpellinklaw.com

David Paul Weber, Esq.
GOODWIN WEBER PLLC
11115 Lake View Ln
Ste #1698
Berlin, MD 21811
301-850-3370
Fax: 301-850-3374
Email: david.weber@goodwinweberlaw.com

Taylor Taranto
1311 North Beech Avenue
Pasco, WA 99301

Hughie Duvall Hunt , II, Esq.
KEMET HUNT LAW GROUP, INC.
7845 Belle Point Drive
20770
Greenbelt, MD 20705
301-982-0888
Fax: 301-982-0889
Email: hhunt@kemethuntlaw.com

                                                  /s/Heba K. Carter_____
                                                  Heba K. Carter