UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIN SMITH, et al.                           *

     Plaintiffs                              *

v.                                           *        Case No. 21-CV-02170

DAVID WALLS-KAUFMAN, et al                   *

     Defendants                             *

## PLAINTIFFS' OPPOSITION TO THE DEFENDANT'S MOTION TO INVOKE ATTORNEY-CLIENT PRIVILEGE AND MEMORANDUM IN SUPPORT THEREOF

COME NOW the Plaintiffs, by and through undersigned counsel, and file this Opposition and Memorandum on the issue of the attorney-client privilege.

## BACKGROUND

This matter is before the Court on the Plaintiffs' Motion to Enforce the Settlement Agreement. (ECF #137). Previous to the Settlement Agreement, a jury found Defendant Kaufman liable for assault and battery of Washington, DC Police Officer Jeffrey L. Smith during the January 6, 2021 Capitol Insurrection, resulting in injuries. The jury clearly found Defendant Kaufman's testimony that he never touched Officer Smith, never disarmed him of his baton, and then never struck him repeatedly with his baton, to be not credible. They also must have necessarily found his testimony that he just went to the Capitol insurrection to see what was going on, and that he was only trying to figure out how to leave, to be not credible

as well.  Finally, they must have clearly found that none of Kaufman's testimony or the arguments of his counsel warranted a Defense verdict, instead awarding punitive damages against him for his misconduct.

The genesis of this Motion was a Court-sponsored mediation that was held on July 8, 2025 and was overseen by Magistrate Judge Sharbaugh.  This was the second mediation before the Magistrate Judge, so Defendant Kaufman clearly understood what the purpose of the mediation must have been.  The parties and their respective counsel were in attendance throughout the mediation session. After approximately four (4) hours of back-and-forth negotiation, Magistrate Judge Sharbaugh circulated a term sheet that recited a dollar-amount; payment terms; and a mutual release and settlement of all claims.  (Exhibit 1)  Magistrate Judge Sharbaugh expressly requested counsel to respond to his email noting their agreement.  Counsel for the Defendant responded: "Defendant agrees.  Thank you. I am glad we would work this out and all parties can move on."  (Exhibit 2)   After the mediation, Plaintiffs' counsel prepared a written settlement agreement which encompassed the applicable terms, and he then forwarded it to Attorney Hunt.   A few days later, however, Attorney Hunt responded that his client had discharged him and that new counsel would be representing Defendant.  Defendant did not sign the Settlement Agreement, nor did he make the payments contemplated by the Agreement.

2

The parties have fully briefed the issue of whether the agreement was enforceable. (ECF #137, 140, 141). This Court then held an evidentiary hearing on October 16, 2025. Among other things, Plaintiffs introduced Exhibits 1 and 2 into evidence. Magistrate Judge Sharbaugh's email chain (together with the responses from both counsel) established *prima facie* evidence that a settlement had been reached. At the evidentiary hearing, Defendant David Walls Kaufman acknowledged being present during the Zoom call; he acknowledged that he was represented by counsel; he acknowledged having input into the terms that appeared on the term sheet (to include the dollar amount; the payment schedule, the include the dates that payments would be made); and the mutual release. The Defendant also acknowledged that tax considerations were important to him, hence the payment schedule, and that all of these same terms were contained in Magistrate Judge Sharbaugh's term sheet. The Defendant acknowledged being able to communicate with his lawyer as well as the Magistrate Judge during the mediation. He also indicated that: (a) he viewed the mediation as a "fact-finding mission," including to see "what kind of man Mr. [sic] Weber was;" (b) that he was driving his car to Chincoteague Island, Virginia, on the Eastern Shore during the Zoom/mediation call; (c) that the reception was spotty during the call; (d) that the

Zoom call lasted about four (4) hours;  and (e) that he always had intended to appeal the case rather than settle it in mediation, despite attending the mediation.[1]

The evidentiary hearing came to a halt.  The Plaintiff  intended  to  ask questions of the Defendant as to circumstances and communications that led up to Attorney Hunt's email, agreeing to the settlement terms to the Court.  The Plaintiff also intended to call Attorney Hunt as a witness, and possibly the Magistrate Judge. That did not happen, however, because the Defendant asserted the attorney-client privilege mid-testimony.  Ultimately, the Court directed the parties to brief the privilege issue, directing that the Defendant (as the party asserting the privilege) would file first.

---

[1] Undersigned counsel notes that Dr. Weber and his wife are **the sole** attorneys with law offices on Chincoteague Island, Virginia, own a residence on the island, and that Chincoteague Island, from the most recent census estimates, has approximately 3000 residents. It is geographically isolated and requires travelling over an 11-mile causeway and drawbridge that leaves it frequently without a significant law enforcement presence. Undersigned counsel has considerable concern for their safety in light of Defendant's testimony that he solely intended to attend mediation to "see what kind of man Mr. [sic] Weber was," that he intended to always appeal and not settle the case, and that he was driving to the very island where counsel's offices and his home were located for unspecified reasons, many hours away. If his testimony were true, this would suggest at minimum, bad faith in attending mediation, and at worst, a potential act of threatening or bizarre behavior, towards an officer of this Court. That Defendant happened to be driving to Chincoteague Island at the very same time as mediation involving Plaintiff Erin Smith and Dr. Weber is highly suspect.  Counsel would ask the Court to order Defendant to stay away from all of Plaintiffs' counsel, Plaintiff, their homes and their offices pending the outcome of this litigation.

## MOOTNESS

In his Motion, the Defendant asserts that the privilege issue is moot based on the fact that Defendant credibly testified: (1) that he did not intend to settle the case; and (2) that he never manifested an intention to be bound by his counsel. The issue is not moot. The Court did not make an ultimate finding as to whether the parties entered a binding settlement agreement. Had it done so, the Court would not have asked for briefing. It would be inherently unfair to make a finding of fact on any issue where all witnesses have not testified. The case law is clear that an evidentiary hearing is to be held when a party asserts that there is an enforceable settlement agreement. "Where, as here, a motion to enforce a settlement agreement is before a district court and there is a genuine dispute as to whether the parties have agreed to enter into a binding settlement, the court must hold an evidentiary hearing and provide an opportunity for cross-examination, as this Court did." *Blackstone v. Brink*, 63 F. Supp. 3d 68, 76 (D.D.C. 2014).

Attorney Hunt is a member of the Bar of the District of Columbia and this Court. He is ethically obligated to make honest representations to the Court. In this case, Attorney Hunt made a clear statement to a United States Magistrate Judge of this Court that there was an agreement to settle this case. Irrespective of the procedural posture of this case, as a matter of policy, common sense and decency, both the Court and opposing parties should be able to rely on counsel's

representations, especially in something as fundamental as whether the case has settled.

As a member of the Bar, Attorney Hunt is surely aware of his duty of candor to the tribunal and the parties, such as Plaintiffs and their counsel, as well as his duty to consult and confer with his client. *See* DC Rules of Professional Conduct 3.3 (Candor to Tribunal) and 4.1 (Truthfulness in Statements to Others). *See also* DC Rule of Professional Conduct 3.4 (Fairness to Opposing Party and Counsel).

It is in this context that the Plaintiffs suggest that the credibility of the Defendant should properly be weighed against other evidence, including the testimony of Attorney Hunt. The Defendant's briefing suggests that Attorney Hunt can add nothing to the calculus, but that is simply not true. If Attorney Hunt acted with express authority in sending the email to Magistrate Judge Sharbaugh, then the Court can properly find there was a binding settlement. As explained in the Plaintiff's Motion to Enforce, the law (including in the District of Columbia) is that an enforceable settlement is entered when an attorney – acting with the express permission/authority of their client - entered an agreement to settle this case. (See Plaintiff's Reply, ECF #41, pp. 9-10). To the extent that there is a credibility concern between the testimony of Mr. Hunt and the Defendant, the Court must make the determination. Under almost any scenario that undersigned counsels can

imagine, it is highly unlikely that Mr. Hunt engaged in blatant false statements that violated his professional ethics obligations.

## **IMPLIED WAIVER**

In the instant case, the Defendant asserts that he did not agree to settle this case. The negative implication of this testimony is that Attorney Hunt sent the July 8, 2025 email to Magistrate Judge Sharbaugh without his client's authority. Defendant cannot simultaneously assert that his lawyer did not have authority to settle this case at the mediation, and at the same time prevent disclosure of the true facts by asserting the attorney client privilege.

The matter before the Court, and its procedural posture, is that the Plaintiff's Motion to Enforce Settlement Agreement remains pending before this Court. The Defendant does not dispute that he attended mediation or that his lawyer sent the July 8th email to the Magistrate Judge. Rather, the Defendant is now maintaining that this email was sent without his authority (this is the logical import of what he says, because the email is fundamentally irreconcilable with the Defendant's testimony that he did not intend to settle the case, and that he never intended to even attend mediation to settle, but to instead only find out "what kind of man Mr. [sic] Weber was"). By raising the defense – that his lawyer lacked authority to settle this case on the terms stated in the Magistrate Judge's term sheet – the

Defendant has injected an issue into this case that compels a finding of implied

waiver of any privilege that might exist.

*Implied Waiver - Generally*

The issue before the Court involves the attorney-client privilege and the

"implied waiver" of the privilege. The seminal case on implied waiver is *Hearn v.*

*Rhey*, 68 F.R.D. 574 (E.D.Wa.1975).  In that case, an inmate sued state officials for

violation of his constitutional rights while confined to a state mental hospital.  The

defendants raised the defense that their conduct was subject to qualified immunity.

The plaintiff sought discovery of what the attorney general had disclosed to his

defendant-clients.  The defendants asserted that this information was not

discoverable because of the attorney-client privilege.  The District Court examined

cases where courts had found the privilege had been waived:

> The factors common to each exception may be summarized as follows: (1)
> assertion of the privilege was a result of some affirmative act, such as filing
> suit, by the asserting party; (2) through this affirmative act, the asserting party
> put the protected information at issue by making it relevant to the case; and
> (3) application of the privilege would have denied the opposing party access
> to information vital to his defense. Thus, where these three conditions exist, a
> court should find that the party asserting a privilege has impliedly waived it
> through his own affirmative conduct. *Rhey,* 68 F.R.D at 581.

The District Court then analyzed the relevance of the privileged information to the

underlying issue before the court.  Specifically, the factual issue for the court was

whether the defendants acted with malice, and the legal advice that the defendants received was "inextricably merged with the elements of plaintiff's case and defendant's affirmative defense." *Id.* The court said that in fairness, the privilege should not apply because the benefit gained from the disclosure far outweighed the injury to the attorney-client relationship.

The District of Columbia Court of Appeals has also recognized implied waiver as an exception to the attorney-client privilege in cases where a party injects an issue into litigation. In *Wender v. USAA,* 434 A.2d 1372, 1373 (1981)*,* the plaintiff had sued an insurance carrier on a claim of bad faith by failing to settle a claim. The carrier relied on an advice-of-counsel defense. The plaintiff, in turn, sought discovery of documentation that implicated the privilege, and the carrier asserted the attorney-client privilege. The Court of Appeals said that the carrier could not properly invoke the attorney-client privilege in this context. The Court noted that as a general rule, every person must offer testimony upon relevant facts in litigation. The attorney-client privilege is an exception to that rule. The privilege exists to encourage full and frank communication between clients and their lawyer. However, the Court said that the privilege is narrow, and that it is limited to the circumstances where its purposes will be served. *Id.* 1373-1374. The Court of Appeals cited to *Hearn v. Rhey, supra*, and explained as follows:

courts addressing the issue of waiver of the attorney-client privilege appear unanimously to have concluded that the privilege is waived where, as here "the party resisting discovery raises as a defense that which transpired between client and counsel or reliance on advice of counsel." *Id.* at 1374.

The Court of Appeals disapproved of the use of the defendant-carrier's use of the privilege where that same party was also expressly relying on the "advice of counsel" defense. Thus, the law of the District of Columbia is that the privilege cannot be used as an offensive tool of the litigation process. *Id.* at 1375. As this is a diversity tort suit, this might end the inquiry.

## *Implied Waiver in the District of Columbia – Federal Court*

Yet, the federal case law of the U.S. District Court for the District of Columbia is similar. In *United States v. Exxon,* 94 F.R.D.246(DDC 1981)*,* the Department of Justice sued Exxon. Exxon raised the affirmative defense that they relied upon government communications and regulations. DOJ, in turn, sought discovery of information to ferret out this claimed defense, and Exxon claimed that the discovery requests were privileged. The District Court agreed that Exxon waived its attorney-client privilege by raising the defense of good faith reliance on government regulations. "The only way to assess the validity of Exxon's affirmative defenses, voluntarily injected into this dispute, is to investigate attorney-client communications" where the defendant Exxon's attorneys interpreted and shared

their views. The Court noted that there was "no other way for plaintiff to explore Exxon's corporate state of mind." *Exxon,* 94 F.R.D at 249.

In another federal case before this Court, *Minebea C v. Papst*, 355 F.Supp.2d 518, 524 -26 (DDC 2005), plaintiff filed a fraud suit and alleged that defendant had made false statements during negotiation of the parties' agreement.  In order to defend that claim, the defendant sought discovery of communications between plaintiff and the lawyer who had represented plaintiff in the negotiation of the agreement.  In filing the suit, Minebea put the issue of justifiable reliance in dispute. The Court said that the factual issue was detrimental reliance and the attorney-client communications were extremely relevant to this issue.  The Court explained that the purpose of implied waiver exception to the attorney client privilege applied.  The exception exists so as to prevent an abuse of privilege from being used as a tool to manipulation for truth seeking.  *Minebea,* 355 F.Supp.2d at 522. The District Court overruled the plaintiff's claim of privilege and said that the defendant was entitled to limited discovery of attorney client communications.

*Implied Waiver – Motions to Enforce Settlement Agreement*

State and federal courts have also applied the implied waiver exception in the context of a motion to enforce settlement agreements.  The paradigm for these cases is virtually the same as exists in the instant case, *to wit*: (1) parties enter settlement

negotiations with the assistance of counsel; (2) some type of deal is reached; (3) one party files a motion to enforce the settlement agreement; and (4) the party defending the claim asserts that their lawyer did not have authority.  In these cases, courts have held that a party may not invoke the privilege to prevent disclosure of attorney/client communications where the client claims that their lawyer did not have the requisite authority to settle a case:

- In *Lender Processing Services, Inc. v. Arch Insurance Company,* 183 So.3d 1052 (Fl App. 2015), the movant filed a motion to enforce a settlement agreement.  The defendant/lender opposed and claimed that they were not bound by the settlement agreement because their lawyer did not have authority to settle the claims on their behalf.  The Florida First District Court of Appeal framed the issue as "whether the privilege was waived by Petitioner given its argument that it and "its counsel were not authorized to release the rights of [its] directors and officers under [Respondent's] policy." *Lender Processing Services,* 183 So.3d. at 1059-1060.  The court held that the defense had injected the issue of their lawyer's settlement authority into the case and could not assert the privilege to prevent disclosure.

- In *Roberts v. Legacy Meridian Park Hosp., Inc.* 97 F.Supp.3d 1245, 1253-1254 (D. Or. 2015), the court held that the plaintiff had waived the attorney-client privilege by asserting that his lawyer did not have authority to settle a

case. The court said that disclosure of these communications is based on simple fairness. The holder of the privilege may still retain the confidentiality of the privileged communications if he abandons his claim that the lawyer lacked authority. Essentially the court said the plaintiff cannot have it both ways; i.e. he cannot claim both that his lawyer lacked settlement authority and at the same time claim that the privilege prevent defendants from confirming or refuting that statement.

- In *Hartman v Hook-Super Inc.,* 42 F.Supp.2d 854, 855 (S.D. Ind. 1999), plaintiff and defendant negotiated the resolution of employment litigation. The defendant filed a motion to enforce, and the plaintiff maintained that his lawyer did not have authority to settle the case. The court said that there was a presumption under Indiana law that the lawyer had the requisite authority to settle the case and that the presumption could not be rebutted unless the client waived the privilege.

*Implied Waiver Applies in this Case*

Applying these principles to the case at bar, it is clear that the implied waiver exception permits Plaintiffs: (1) to call Attorney Hunt as a witness; (2) to ask questions of the Defendant on this same issue without restriction; and (3) to obtain discovery, including the emails, text messages and phone call logs concerning the

communications between Mr. Hunt and the Defendant pertaining to settlement authority and the mediation before the Magistrate Judge. The Defendant has opposed the Motion to Enforce. However, the Defendant does not dispute that he attended mediation and that at all times relevant thereto he was represented by Attorney Hunt. There is no dispute that Attorney Hunt emailed the Magistrate Judge, assenting to the settlement terms. Defendant has squarely raised the issue of whether his attorney had the authority to settle the case on his behalf. Thus, the Defendant in this case has injected this very issue into the litigation, all while attempting to hide behind the privilege.

By invoking the privilege, the Defendant is now blocking Plaintiffs' access to critical information. It is true that in the District of Columbia the client retains the right to accept or reject a settlement offer. *See In Re: Hager*, 813 A.2d 904, 917 (DC 2002). However, a binding and enforceable settlement agreement should be upheld if the client has granted his lawyer authority to negotiate and settle the case on his behalf. *Rios v I.S. Enterprises*, 113 F.Supp.3d 283, 285 (DDC 2015). In certain cases (such as the instant case), it is necessary for the Court to take testimony and obtain documentation to inquire as to whether the lawyer had the requisite authority. See, e.g. *Greene v. Rumsfeld*, 266 F.Supp.2d 125 (D.D.C. 2003) ("plaintiff testified that he had granted his counsel the authority to negotiate a settlement agreement, and the plaintiff's counsel testified that the plaintiff authorized her to state

14

that he would take the package offer if the defendant added" more money to the settlement offer. *Id.* at 137 n. 10).

In the instant case, the Defendant's assertion of the privilege blocks the Plaintiffs and this Court from learning critical information as to the authority that Attorney Hunt possessed when he sent the email to Magistrate Judge Sharbaugh. This is fundamentally unfair. Further, the current testimony before the Court suggests that at minimum, Defendant acted with bad faith in the mediation. The existing evidence indicates a conflict between the testimonial evidence of the Defendant, and the documentary evidence of his lawyer. As the moving party, the Plaintiffs bear the burden of proving that Attorney Hunt had the authority of his client to settle this case. *Hodges v. Potter,* 2005 WL 6336682, at *1 (D.D.C. Aug. 31, 2005) (citing *Hill v. Georgetown* Univ., 2005 WL 1378761, at *5 (D.D.C. May 13, 2005)). The Plaintiffs respectfully request that the Court find that there has been an implied waiver of the privilege because the Defendant has injected the issue of his attorney's authority into this litigation. Alternatively, Plaintiffs urge the Court to make an adverse inference against the Defendant's testimonial credibility in favor of the documentary credibility of his attorney's email accepting the settlement, such that the acceptance be binding. In closing, the Defendant simply cannot be allowed to have it both ways.

## **CONCLUSION**

In light of the foregoing, Plaintiffs request that this Court permit the Plaintiff to inquire of both Defendant and Attorney Hunt as to their communications related to settlement of this case and obtain discovery, specifically as it pertains to any authority granted by Defendant to his counsel.  Further, counsel asks this Court to order Defendant to say away from Plaintiff, counsel, their homes and offices.


_____/s/ David P. Weber_
David P. Weber, #468260

Richard J. Link,
GOODWIN WEBER PLLC
11115 Lake View Ln, #1698
Berlin, MD 21811(301) 850-7600
david.weber@goodwinweberlaw.com
richard.link@goodwinweberlaw.com
Counsel for Plaintiffs


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically served via ECF, this 14th day of November, 2025, to: Heba Carter, Esq., 1320 Old Chain Bridge  Road, Suite 440, McLean, VA 22101; and  Hughie Hunt, Esq. KEMET HUNT LAW GROUP, INC., 7845 Belle Point Drive, Greenbelt, MD 20705  hhunt@kemethuntlaw.com

_____/s/ David P. Weber_
David P. Weber

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERIN SMITH, et al.                              *

      Plaintiffs                          *

v.                                              *    Case No. 21-CV-02170

DAVID WALLS-KAUFMAN, et al                      *

      Defendants                          *

**<u>ORDER</u>**

THIS MATTER was before the Court on October 16, 2025 for an evidentiary hearing on the Plaintiff's Motion to Enforce Settlement Agreement. The Court heard testimony from Defendant David Walls-Kaufman. The Defendant invoked his attorney-client privilege as to a line of questioning propounded to him, as well as to his counsel, Hughie Hunt. The Court directed the parties to brief the issue of the attorney-client privilege.

UPON CONSIDERATION of the Memorandum of the parties and the legal authorities cited therein, the Court finds that the Defendant has raised the contention that his counsel, Hughie Hunt, Esq., lacked the requisite legal authority to bind him to a settlement agreement. By injecting that issue into the litigation, the Court finds that the implied waiver exception to the attorney-client privilege applies. Therefore, the Court will permit the Plaintiffs to question both the Defendant and Attorney Hughie Hunt as to all matters related to the authority of the attorney to negotiate and conclude the settlement on Defendant's behalf, including conversation regarding settlement during the mediation. Said waiver shall permit both

17

oral testimony and the production of any documents that relate to this issue, including emails, text messages and telephone logs.  The attorney client privilege shall continue to apply to all communications between Attorney Hunt and the Defendant that do not pertain to the issue of settlement, settlement authority or mediation.


_____                    _____
Date                                                                         Judge Ana C. Reyes